## In re S.R., Juvenile

[599 A.2d 364]

No. 90-379

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed October 4, 1991

418

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Martha Csala*, Assistant Attorney General, and *Keith Aten*, Law Clerk (On the Brief), Waterbury, for Plaintiff-Appellee.

*Christopher Jeffrey*, Montpelier, for Defendant-Appellant Mother.

*Michael Rose*, St. Albans, for Defendant-Appellant Father.

**Allen, C.J.** The parents of S.R., a juvenile, appeal the termination of their residual parental rights. We affirm.

S.R.'s mother argues that the juvenile court's findings concerning her mental illness and conditions in the home did not warrant the termination. She also claims that the court's findings of risk to S.R. were not supported by clear and convincing evidence. Finally, she claims that stagnation in parental capacity was caused primarily by the Vermont Department of Social and Rehabilitation Services (SRS) rather than by fault on her part.

S.R.'s father joins the arguments advanced by the mother. He also raises separate challenges to the sufficiency of the evidence and the court's findings in support of termination of his rights. In addition, he argues that the findings regarding the quality of the preadoptive foster home are irrelevant and violate his constitutional rights.

We hold that the juvenile court's findings are sufficiently supported by the evidence and that those findings in turn support the conclusion that termination of parental rights is in the best interests of S.R. We also find that the court's inquiry into the quality of the preadoptive foster home was relevant and did not violate the father's constitutional rights. For these reasons, we affirm the juvenile court's order terminating the rights of both parents.

## I.

S.R., a child with special needs, is the daughter of parents who never married but have lived together for over ten years. Her father has an alcohol problem which causes stress and discord in her relationship with him. Her mother suffers from seizures.

In 1986, when S.R. was nine months old, the juvenile court found her to be a child in need of care and supervision and transferred custody to SRS. This disposition was based on a diagnosis by a psychologist at Boston Children's Hospital that her mother suffered from a rare psychological disorder known as Munchausen syndrome by proxy. It causes a parent, usually the mother, to report or cause a serious illness or injury in her

child in order to gain the attention and sympathy of the medical community. This illness, recognized in the psychiatric community and by the courts (see, e.g., *People v. Phillips*, 122 Cal. App. 3d 69, 77–79, 175 Cal. Rptr. 703, 707–09 (1981), and *In re Colin R.*, 63 Md. App. 684, 690, 493 A.2d 1083, 1086 (1985)), can be fatal to the child. In this case, the mother caused breathing difficulties in S.R. requiring extensive medical evaluation of S.R. prior to the Munchausen syndrome by proxy diagnosis.

During the three and one-half years prior to the termination of residual parental rights, SRS provided appropriate and extensive services for S.R. and her parents designed to reunify the family. These services included counseling for the mother, family counseling, parent education, special education for S.R., supervised home visits, and one period of home placement during which S.R. sustained several injuries. These services were largely ineffective because the parents did not acknowledge the diagnosis of Munchausen syndrome by proxy or fully avail themselves of the services offered by SRS to improve their parenting skills. After S.R. left her parents' home in 1988, SRS continued its efforts to reunify the family by continuing to provide counseling and parent education for the mother. Attempts to involve the father in the counseling or to address his alcohol problem were unsuccessful. Seeing no improvement in the capacity of either parent to resume parental duties, SRS sought to terminate both parents' residual rights through the modification of S.R.'s disposition order.

## II.

■ ■ When termination of parental rights is sought at a modification proceeding, 33 V.S.A. § 5532 requires the court to conduct a two-step analysis. *In re J.R.*, 153 Vt. 85, 99, 570 A.2d 154, 161 (1989). First, the court must find a substantial change in material circumstances. *Id.* Second, the court must find that the best interests of the juvenile require termination of parental rights. *Id.* at 100, 570 A.2d at 161. Title 33 V.S.A. § 5540 sets forth four factors for the court to consider when evaluating the best interests of the child:

> (1) The interaction and interrelationship of the child with his natural parents, his foster parents if any, his siblings, and any other person who may significantly affect the child's best interests;

(2) The child's adjustment to his home, school, and community;

(3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and

(4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.

The court's findings must be supported by clear and convincing evidence, and such findings will withstand Supreme Court review unless clearly erroneous. *In re H.A.*, 153 Vt. 504, 515, 572 A.2d 884, 890 (1990). The lower court's conclusions of law, if supported by the findings, will be affirmed. *Id.*

■ Both parents argue that termination of parental rights is not supported by sufficient findings of risk to S.R. The detailed and extensive findings of the trial court, as well as the record upon which they are based, sufficiently support the termination order. The court found that S.R. was at risk due to her mother's Munchausen syndrome by proxy and the failure of both parents to acknowledge that disorder. The court also found that S.R. faced risks of injury and developmental harm due to the inadequacy of her parents' supervision, their inability to assist in the delivery of necessary special services, her mother's seizure disorder, and problems between the mother and father which were exacerbated by the father's drinking problem. These findings all find support in the record from ample credible evidence. For example, the psychologist who diagnosed the Munchausen syndrome by proxy testified that S.R. faced a ten-to-twenty percent chance of death based on her parents' denial of that disorder. He also testified that the risk to S.R. due to that denial increased with the level of stress in the home.

■■ The mother and father also argue that the court based its modification of S.R.'s case plan on changed circumstances that were the fault of SRS rather than the parents. When the State seeks modification of a juvenile case plan, the court may find a substantial change in material circumstances based on "stagnation." *In re J.R.*, 153 Vt. at 99, 570 A.2d at 161. Stagnation is the passage of time with no improvement in parental capacity to care properly for the child. *Id.* While stagnation

caused by factors beyond the parents' control could not support termination of parental rights, the claim that SRS caused stagnation in this case is without merit. Prior to termination, SRS worked with S.R.'s parents for well over three years providing services in an effort to effect reunification. In spite of those efforts, the trial court concluded that there had been no improvement in the ability of either parent to provide a safe environment or to care properly for S.R. The court specifically found that the parents refused to participate in regular counseling or provide transportation for S.R. to attend special early education classes. More significantly, they both failed to acknowledge the role of the mother's Munchausen syndrome by proxy. The findings in support of stagnation are well supported by the evidence, and we will not disturb the court's conclusion based on those findings.

In addition to joining the arguments made by S.R.'s mother, the father advances two arguments of his own. First, he argues that the conclusion that he is incapable of properly caring for S.R. was not sufficiently supported by the findings or the evidence. Specifically, he claims that his alcohol problem was not shown to affect S.R. adversely and is therefore irrelevant, that his failure to acknowledge the mother's Munchausen syndrome by proxy is not relevant, that the lack of a safe home environment is not attributable to him, and that his use of corporal punishment was not unreasonable. Second, he argues that findings regarding the quality of the preadoptive foster home are irrelevant and violate his constitutional rights.

■ Concerning the father's first argument, the court found that the father's alcohol problem caused stress in the home, including frequent arguments and occasional separations, and that this stress had a negative impact on S.R. Similarly, the court found that both parents' failure to acknowledge the Munchausen syndrome by proxy posed a direct threat to the health and safety of S.R., which increased with the level of stress in the home. Both findings are well supported by credible evidence. Furthermore, these findings are but two of several factors upon which the court based its decision to terminate the father's parental rights. The record also supports the finding of lack of safety in the home, which is equally attributable to the father and the mother. Finally, the court below placed no re-

liance upon the father's use of corporal punishment. It relied on a broader finding of lack of parental ability to care properly for S.R. We find extensive evidence in the record to support the court's findings regarding the father's inability to parent. These findings, in turn, support the conclusion that the father is incapable of properly caring for his daughter.

The father's second argument is that the court's consideration of the quality of S.R.'s preadoptive foster home is irrelevant and violates his constitutional rights. At modification proceedings, the statute requires the court to consider the interaction of the juvenile with foster parents. 33 V.S.A. § 5540(1). Given this statutory requirement, the father's argument that such inquiry is irrelevant and prejudicial is not well founded.

Furthermore, consideration of the preadoptive home does not, as the father argues, violate his fundamental right to care for S.R. in the context of the family. As mentioned above, 33 V.S.A. § 5532 requires the court to conduct a two-step analysis prior to modifying a disposition order. Here, the court first found a change in material circumstances based on stagnation of the parents' ability to properly care for S.R. The father's inability to provide a safe home and care for his daughter finds ample support in the record. Only after satisfying this prerequisite did the court consider whether modification was in the best interest of S.R. As part of this analysis, the court was required by 33 V.S.A. § 5540(1) to consider the relationship between S.R. and her foster parents. The father's reliance on *In re N.H.*, 135 Vt. 230, 373 A.2d 851 (1977), is misplaced. In that case, we held that our statutes do not "allow for intervention simply because a child might be better off somewhere else." *Id.* at 236, 373 A.2d at 856. We based our decision, however, on the "absence of any convincing proof that the appellant [was] an unfit parent, demonstrably incapable of providing an appropriate home for his child." *Id.* at 237, 373 A.2d at 857. Here, the court properly followed the required two-step analysis and found the incapacity of both parents before considering the preadoptive home as part of its analysis of the best interests of S.R.

This Court has long recognized the awesome power involved in terminating parental rights. *In re H.A.*, 153 Vt. at 513, 572

A.2d at 889. This power is constrained by procedures set forth in 33 V.S.A. chapter 55 and the holdings of this Court. In this case, the trial court properly followed both. It made appropriate findings based on clear and convincing evidence. These findings are not clearly erroneous and support the court's conclusion that the best interests of S.R. require the termination of her parents' residual rights.

*Affirmed.*