*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-391

FEBRUARY TERM, 2015

| | |
|---|---|
| In re A.H., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Windsor Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 104-10-12 Wrjv |
| | |
| | Trial Judge: Harold E. Eaton, Jr. |

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his residual parental rights in son A.H. He argues that the court erred by holding him primarily responsible for being incarcerated. We affirm.

A.H. was born in October 2008. He was taken into the custody of the Department for Children and Families (DCF) in October 2012 pursuant to an emergency care order. He was subsequently adjudicated as a child in need of care or supervision. In April 2014, DCF filed petitions to terminate both parents' rights. Mother voluntarily relinquished her rights conditioned on father's rights being terminated. In September 2014, following a hearing, the court issued an order terminating father's rights.

The court found as follows. In late September 2012, DCF received a report that drug dealing was occurring out of the family's apartment. Shortly thereafter, police searched the apartment and found large quantities of drugs, including 1100 bags of heroin, as well as a large amount of cash. A.H. was used as a "human shield" during the police raid. As a result of the search, father was arrested and charged with three felonies: possession of heroin, possession of cocaine, and possession of a depressant/stimulant (oxycodone).

Father was arraigned on these charges in October 2012. Father had been in custody since his arrest for lack of bail. At the time of the court's order, the criminal case had not been set for trial, and there was a pending motion to suppress. Father suggested that he would be out of jail in "one year, max" based on an offer from the State's Attorney. The court found that father overlooked that the State's offer, even if made, had not been accepted by him, nor had a sentencing judge agreed to accept any plea agreement. Father's assertion that a hearing on the suppression motion might result in his imminent release was only one possible outcome of the criminal charges and was by no means a certainty. The court found that the amount of time father might remain incarcerated was simply unknown. Beyond obtaining his release, father also needed to seek and find suitable housing, which also would take an unknown amount of time.

The court found that father had been unable to fulfill many aspects of his DCF action plan due to his incarceration. These included participating in Family Time Coaching, working with recommended service providers, locating and maintaining appropriate housing, creating a

healthy support system, and submitting to random drug tests. Father argued that he had complied with those aspects of the action plan that he could undertake while incarcerated. The court found otherwise. It recognized that father had taken several parenting classes in jail. Nonetheless, it explained that the action plan required resolution of father's criminal charges, and those charges remained pending. While some aspects of any delay in resolving these charges were outside of father's control, others were not. The court also noted that father failed to comply with the requirement that he follow the rules set by the Department of Corrections. The evidence showed that he had been placed in solitary confinement "two or three times," at least once for behavioral issues. Father also failed to engage in mental health services. Regardless of the action plan, the court continued, father had not kept in touch with A.H. whatsoever during his incarceration, through cards, letters, or otherwise.

The court found that A.H. had been in foster care for almost one-third of his life and was thriving in his foster home. His foster parents loved him, and he was safe, secure, and happy in their home. A.H. was in therapy over concerns of PTSD symptoms arising from "a complicated trauma history" that included the police raid at his house. A.H. also had many behavioral issues, including sleeping difficulties, irritability, angry outbursts, difficulty concentrating, and hyper-vigilance. The court found no evidence that father had any insight into A.H.'s mental health or behavioral issues. A.H. expressed his fear of father, stating that father hurt him, that he did not love father, and that father did not love him. A.H. had not expressed any desire to see father.

Based on these and other findings, the court concluded that father had stagnated in his ability to parent, and that termination of his rights was in A.H.'s best interests. With respect to stagnation, the court pointed to father's failure to address issues set forth in the action plan. It found father responsible for the criminal conduct that resulted in his incarceration, and noted that his conduct resulted in A.H. being used as a human shield during the raid, which was a very traumatic event for A.H. The court focused on the consequences of father's incarceration, which had resulted in the breaking of whatever bond had existed between father and A.H. It observed that any increase in father's parenting skills through his parenting classes was offset by his continued lack of contact with A.H. and with the passage of time.

Turning to the statutory best-interest factors, the court found that no bond existed between father and A.H. It reiterated that A.H. was doing well in his foster home. The court found no likelihood that father would be able to resume his parental duties in a reasonable amount of time given A.H.'s age, father's continuing inability to be a physical part of A.H.'s life, father's lack of contact with A.H. over the prior two years, and A.H.'s ongoing fear of father. While father loved A.H., on his own terms, the court continued, he had no appreciation of the trauma that A.H. had suffered from the events leading up to father's arrest and the resulting loss of contact with father; he had not reassured A.H. that he still loved him or wanted to be a part of his life. For these and numerous other reasons, the court concluded that termination was in A.H.'s best interests. Father appealed.

Father does not challenge any of the court's factual findings on appeal. Instead, he argues that the court based its termination decision on "factors beyond his control" because it held him primarily responsible for his incarceration, its length, and the consequences thereof. Citing In re S.R., 157 Vt. 417, 421-22 (1991) (recognizing that "stagnation caused by factors beyond the parents' control" cannot support termination of parental rights). Father maintains that he cannot be held responsible for his circumstances because a court has not yet determined his guilt in the criminal proceedings.

2

The court did not base its decision on factors beyond father's control. Father was directly responsible for failing to initiate any contact with A.H. during the two years that A.H. was in DCF custody. It was this behavior, as well as the passage of time, that led the court to find that father had no bond with A.H. Father also failed to obtain mental health counseling, or abide by DOC's rules, as required by his action plan. He lacked insight into his son's traumatic history and his current mental health and behavioral issues. He took no steps to reassure A.H. that he loved him or wanted to be a part of his life. The absence of a criminal conviction does not absolve father of responsibility for these actions. It does not undermine any of the court's factual findings. Regardless of the status of father's pending criminal charges, it was appropriate for the court to consider father's incarceration, and the consequences thereof, in evaluating what course of action was in A.H.'s best interests. See In re D.S., 2014 VT 38, ¶ 26 (recognizing that "[t]he fact of father's incarceration is a proper consideration in the court's analysis of father's fitness pursuant to the statutory standard"). In reaching its decision, the court neither penalized father for exercising his constitutional rights in the criminal proceeding, as he suggests, nor did it require him to admit criminal misconduct to avoid the termination of his parental rights. Instead, it based its decision on the unchallenged findings recited above as well as other findings. These findings amply support the court's conclusion that father had stagnated in his ability to parent, and that termination of his rights was in A.H.'s interests. See In re G.S., 153 Vt. 651, 652 (1990) (mem.) (stating that on review, Court will uphold trial court's findings unless clearly erroneous, and its conclusions where supported by the findings).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice