*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-244

OCTOBER TERM, 2015

| | |
|---|---|
| In re K.B., Juvenile | } APPEALED FROM:<br>}<br>} Superior Court, Bennington Unit,<br>} Family Division<br>}<br>} DOCKET NO. 146-12-13 Bnjv<br><br>Trial Judge: William D. Cohen |

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his son K.B., born in December 2013. On appeal, father argues that the court erred in concluding there was a change of circumstances because any stagnation was due to State's refusal to accommodate parents' disabilities, and the court erred in concluding parents would not be able to assume parental duties within a reasonable time. We affirm.

K.B. has been in foster care since shortly after his birth due to parents' inability to care for him. The concerns prompting intervention by the Department for Children and Families (DCF) included parents' history of losing parental rights of other children, father's past criminal conduct including sex offenses and acts of violence, parents' lack of housing, and parents' developmental limitations. Parents stipulated that K.B. was a child in need of care or supervision (CHINS) for lack of proper parental care, and legal custody of K.B. was transferred to DCF. The disposition plan included concurrent goals of adoption and reunification with parents. The plan of services required parents to, among other things, participate in parent education, maintain safe housing, attend all visits, and participate in individual therapy. Father was also required to work with a therapist to address his aggressive and sexual-offending history and to follow through on mental-health and psychosexual-treatment recommendations.

In November 2014, DCF filed petitions to terminate parents' residual rights. The court held a hearing on the petition in March 2015. The State presented testimony from several witnesses, including K.B.'s physician, the Easter Seals worker who supervised visits, the DCF social worker, and K.B.'s foster mother.

The court found that there was a change of circumstances due to parents' stagnation. The court found that father's parental skills had not improved over time. Father had not consistently attended visits or appointments required by his case plan. Father did not engage with K.B. during visits and could not move beyond supervised contact with K.B. due to his sex offense convictions. The court further found that father had not been able to implement techniques learned and his parental performance was "unchanged over time." The court also found that mother's ability to care for K.B. had not improved over time. She had inconsistent attendance at visits. Mother had little confidence in being able to parent, and was insecure about spending

time alone with K.B. Her implementation of new techniques, even in a highly supported environment, stagnated or declined prior to the termination hearing.

The court further concluded that termination was in K.B.'s best interests. The court explained that K.B. is well adjusted to living with his foster family and is generally healthy although has been slow to grow physically. After visits with parents, however, K.B.'s eating habits decline. The court found that parents do not play a constructive role in K.B.'s life and do not contribute to his emotional or physical wellbeing. In addition, the court found that neither parent would be able to assume parental duties within a reasonable period of time.

The court then expressed its opinion that for parents with mental illness or mental disabilities, state services historically have exhibited "shameful impatience" and "unwillingness to adjust . . . services to accommodate and supplement the parents' needs." The court noted that here "parents are caring and well-intentioned, and have positive interactions with their child and safe and fairly stable home." Nonetheless, the court determined that the statutory standard for termination had been met. Father appeals.

When a post-disposition termination of parental rights is sought, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). The court must first find that there has been a substantial change in material circumstances; second, the court must find that termination of parental rights is in the child's best interests. Id. In assessing the child's best interests, the court is guided by the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parental duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.); see 33 V.S.A. § 5114(a)(3) (setting forth statutory criteria). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

Father first argues that the court erred in concluding that there was a change of circumstances in this case because DCF did not properly accommodate parents' disabilities, as indicated by the trial court's own assessment that DCF exhibits an unwillingness to work with parents that have mental illness or mental disabilities.

A change of circumstances occurs "when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re B.W., 162 Vt. at 291 (quotation omitted). Stagnation cannot be based on factors beyond a parent's control. In re S.R., 157 Vt. 417, 421-22 (1991).

Here, the evidence supports the court's findings that there was a change in circumstances due to stagnation and that the stagnation was not caused by factors beyond father's control. Although the court in dicta lamented the services generally available for parents with mental illness or disabilities, in this case, the court found that father's progress had stagnated for reasons entirely within father's control. Due to father's criminal history of sex offenses and violent acts, father had supervised visits with K.B. Father was unable to progress beyond these supervised visits. Father did not consistently attend the appointments required of him by this case plan or his visits with K.B. and did not engage with K.B. when he was present. He did not work consistently with the parent educator and was unable to implement parenting techniques. Consequently, he did not form a bond with K.B., and his parental performance remained unchanged over time.

Father contends that his lack of progress was due to DCF's actions in failing to accommodate his disabilities, but he does not indicate what additional services he alleges DCF should have provided. DCF reasonably accommodated his needs by scheduling frequent visits

2

with pre- and post-visit parent education and at a location within walking distance of father's residence. Father did not, however, consistently attend visits or engage with the Easter Seals parent educator. The parent educator testified that father's intermittent attendance for visits and for pre- and post-visit discussions made progress difficult. Therefore, it was father's own actions in failing to attend visits and engage with the parent educator and with K.B. during the visits he did attend that hampered his progress and caused the stagnation.

Father next argues that the court's best-interest analysis was flawed. Father contends the court erred in concluding he would not be able to parent within a reasonable period of time because his inability to progress in parenting was caused by DCF's failure to provide appropriate services and there was no evidence to indicate what a reasonable period of time was in this case.

As explained above, father fails to demonstrate that his inability to parent within a reasonable time is the result of DCF's failure to provide appropriate services. Father did not object to the services set forth in the case plan nor did he request additional services that were not provided. In addition, the court's findings demonstrate that father's failure to progress was due to his own actions. In assessing K.B.'s best interests, the court found that father did not have a "clear bond" with K.B., and his attendance at visits was too infrequent to implement learned parenting techniques. Thus, the court concluded that he would not be able to parent in the "near or foreseeable future."

In addition, the facts support the court's determination that it was not reasonable to make K.B. wait for father to be able to assume parenting where this would not occur in the "near or foreseeable future." "The reasonableness of the time period is measured from the perspective of the child's needs, and may take account of the child's young age or special needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29 (citations omitted). Here, the court found K.B. had special needs when it came to his physical health and his parents had not been able to address those needs. Thus, parents had a negative impact on his physical wellbeing. Further, the court found that parents did not contribute to K.B.'s emotional wellbeing. Under these circumstances, and given K.B.'s young age and the fact that he had been in state custody since birth, the facts support the court's conclusion that it was not reasonable for K.B. to wait for permanency for the time period needed for parents to be able to assume parental duties.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3