*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2016-208

SEPTEMBER TERM, 2016

In re B.M. & K.M., Juveniles         }     APPEALED FROM:

} 

}     Superior Court, Caledonia Unit,

}     Family Division

} 

}     DOCKET NO. 96/97-11-14 Cajv

                                                      Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Father appeals the superior court's order terminating his residual parental rights with respect to his children B.M. and K.M. We affirm.

B.M. and K.M. were born on October 10, 2012, and November 24, 2014, respectively. Two days after K.M.'s birth, the Department for Children and Families (DCF) filed a petition alleging that the children were in need of care or supervision (CHINS) due to missed medical appointments for B.M.'s special needs and the mother's use of non-prescribed medications and inconsistent prenatal care with respect to K.M. The parties stipulated to the children being CHINS based on the following facts: (1) B.M. had to remain at Dartmouth-Hitchcock Medical Center (DHMC) for four months after his premature birth at twenty-seven weeks with developmental delays and medical concerns due to premature lungs; (2) in July 2014, DHMC reported that B.M. could no longer be seen there because of multiple missed medical appointments, resulting in him not getting the developmental services he needed; (3) that same month, Children's Integrative Services reported that visits with B.M. had been put on hold because the family was moving; (4) in November 2014, Women's Wellness reported that the mother had been scheduled to receive weekly progesterone shots to prevent another premature delivery but had been seen only five times during her pregnancy with K.M.; and (5) that same month, Women's Wellness also reported that the mother had tested positive for non-prescribed methadone before and after K.M.'s birth and had acknowledged taking another non-prescribed medication multiple times per week during her pregnancy. The same day the CHINS petition was filed, the superior court issued an emergency care order transferring custody of the children to DCF, which placed them with their maternal grandparents, with whom the family had lived for a period of time before K.M.'s birth.

In February 2015, DCF filed a disposition case plan recommending, among other things, that father have contact with the children at least three times per week, complete substance-abuse and mental-health evaluations and follow any recommendations, complete a parent-education program, demonstrate an understanding of B.M.'s medical and developmental needs, and engage in any recommended services to address domestic violence concerns. Later that same month, DCF sought termination of both the mother's and father's parental rights. The initial disposition and termination hearing was held over two days in March and April of 2016. During the first day of the hearing, the mother voluntarily relinquished her parental rights. Following the second day of

the hearing, the superior court terminated father's parental rights after making findings and conclusions on the record. While noting that father had not complied with any of the case plan goals other than maintaining housing and employment, the court focused primarily on father's lack of contact with the children. The court found that father sporadically visited the children from November 2014 until July 2015, when all contact with the children ended. The court further found that father had no significant or constructive relationship with the children, who had bonded with their maternal grandparents, and that he would not be able to resume his parental rights within a reasonable period of time from the perspective of the young children, who had been in DCF custody and living with their maternal grandparents for a year and a half.

On appeal, father argues that the superior court terminated his parental rights based on factors beyond his control and engaged in unfounded speculation in doing so. See In re S.R., 157 Vt. 417, 421-22 (1991) (stating that "stagnation caused by factors beyond the parents' control could not support termination of parental rights," but rejecting as meritless parents' argument that DCF caused stagnation). In asserting that his lack of contact with his children was not his fault, father reasons as follows. The court should have held a timely disposition hearing to review DCF's case plan because nothing in the record supported requiring him to engage in the recommended services. If the case plan had been rejected early on, his testy relationship with DCF could have been avoided and DCF would have ensured frequent contact between him and the children. Instead, DCF created obstacles to its goal of thrice weekly visits by not providing sufficient gas vouchers and restricting visits to the grandparents' home, which was located over an hour away from where he lived. Father also criticizes the court for suggesting, absent any supportive evidence, that father could have obtained work similar to what he was doing nearer to the children.

Upon review of the record, we conclude that father has not demonstrated that the superior court based its termination decision on factors beyond his control. It is not entirely clear from the record why the court did not timely address DCF's plans for services or why there was a significant delay in holding the termination hearing. On the other hand, there is no indication that DCF's recommendation of services for father significantly impacted the frequency of father's contact with the children. DCF recommended substance abuse and mental health evaluations to determine whether any further services in those areas were necessary. As the superior court noted, there was evidence in the record that father regularly used marijuana, which may or may not have impacted his ability to parent the children, and had problems regulating his emotions, as evidenced by instances of his angry and inappropriate conduct with DCF services providers. In any event, as noted, nothing in the record suggests that DCF's recommendation of these or other services caused father to reduce the number of visits with the children.

For the most part, the evidence at the termination hearing regarding father's lack of contact with the children centered around transportation difficulties. DCF did not want to pay for use of a supervised visiting center in St. Johnsbury where father lived, but agreed to provide father with a gas voucher for one round-trip visit a week between his home in St. Johnsbury and the maternal grandparents' home in South Royalton. In the eight-month period from November 2014 when the children were placed with the maternal grandparents until July 2015, when father separated from mother and stopped visiting or contacting the children, father visited the children a total of seventeen times. This averages out to approximately twice a month (the visits were irregular), even though DCF offered gas vouchers once every week. At the termination hearing, father gave several explanations, not all of which were consistent with each other, for not visiting the children more frequently. He explained that he was working five or six days a week and visiting his other kids on the Saturdays that he was not working. When asked why he stopped visiting the children altogether in July 2015, he mentioned problems with the mother and his car breaking down, but

also stated, "I don't even really know why, but it just did. I don't know." Father further acknowledged that he had had no contact whatsoever with the children since July 2015, even by telephone.

This record does not demonstrate that father's lack of contact with his children was based on factors beyond his control. Neither his relatively infrequent contact with the children during the first eight months after they came into DCF custody nor the complete lack of contact in the eight or nine months prior to the termination hearing can be attributed to DCF or the court. The court acknowledged father's transportation problems, but concluded that other factors were involved in his failure to visit the children. At one point, the court suggested that father could have found the type of work he was doing—roofing—nearer to the children, but then noted that his relationship with a woman in St. Johnsbury was a reason for him to stay where he was, and that, in any case no reason explained his complete failure to contact his children for nearly a year. Nothing in these comments by the court support reversal of its decision. Essentially, the court terminated father's parental rights because father had virtually no relationship with these young children for nearly a year and a half after they came into DCF custody; his total disengagement from the children for the eight months preceding the final hearing and his spotty engagement before that time was due to factors besides his transportation challenges, such as his resentment of the situation; and he would be unable to care for the children within a reasonable period of time. The record, including the court's findings and conclusions, support its decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3