*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-324

JANUARY TERM, 2017

| | | |
|---|---|---|
| In re W.C., R.C., B.C. & B.C., Juveniles | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Franklin Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 76/77/78/79-5-14 Frjv |

Trial Judge: Alison S. Arms

In the above-entitled cause, the Clerk will enter:

Mother and father appeal from the trial court's order terminating their parental rights. They argue that the court erred in holding them responsible for stagnating in their ability to parent, and in evaluating the statutory best-interest factors. We affirm.

Parents have four children: W.C., born in January 2004; R.C., born in January 2005; Be.C., born in November 2011; and B.C., born in February 2013. The Department for Children and Families (DCF) first became involved with the family in 2010 due to parents' inadequate supervision of the children, inappropriate housing, violence in the home, parents' substance abuse, and parents' failure to meet the children's needs. DCF made referrals to services, including mental health organizations, to support parents in meeting the children's needs but parents did not consistently engage in services or make necessary changes. In May 2014, DCF filed a petition alleging that the children were in need of care or supervision (CHINS) and the children were taken into DCF custody. Parents stipulated that they could not provide the care necessary for the children's well-being due to their lack of stable housing, father's substance abuse issues, mother's inability to parent the children alone, and parents' failure to consistently follow through with services and service providers.

In April 2015, DCF moved to terminate parents' rights, and following three days of hearings, the court granted its request. The court found that parents failed to meet any of the expectations in the disposition order. Parents had chronic housing issues. They lived with various friends, and remained living with a certain couple even after R.C. disclosed that she had been sexually abused by the husband. Parents did not believe R.C.'s allegations and continued to live with this couple. This couple also verbally and physically abused W.C., including in mother's presence. Mother did nothing to stop the abuse. Neither parent showed any insight into the trauma that the children suffered while living in this home and the trauma resulting from parents' failure to protect them. In April or May 2015, parents obtained their own apartment. The court found it unclear how safe and stable parents' housing situation was due in part to parents' failure to sign releases as required. When they moved in, parents had no electricity in the apartment due to a large outstanding bill, and as of May 2016, parents still did not have electricity. Parents instead ran extension cords from a neighbor's home to their apartment.

Neither parent is employed. Father had been without a driver's license for over ten years following a drunk driving conviction. Father abused alcohol and smoked marijuana in the children's presence. There was also significant domestic violence in the home, both witnessed and experienced by W.C. Father failed to complete an assessment with Domestic Violence Solutions by January 1, 2015, as required. He also failed to adequately address his substance abuse issues. He delayed in obtaining a substance abuse assessment and in attending an Intensive Outpatient Program group. He occasionally attended group meetings and continued to test positive for THC and alcohol. Father admitted to having an alcohol problem and continuing to drink until at least January 2016. Turning to mother, the court found that she has significant mental health problems, which affected her ability to care for the children. Mother failed to promptly and consistently address those issues. Mother also failed to find safe supports to assist in her relationship with father and her care for the children. Additionally, both parents failed to attend the children's appointments or follow through with meetings regarding the children's health, education, and development; they failed to regularly communicate with children's providers or teachers; and they failed to make progress in their visits with the children. To the extent that mother's problems stemmed from cognitive deficiencies, DCF referred mother to work with a certain counselor, but mother failed to follow through. Despite more than seventeen months of Family Time Coaching, moreover, parents had not progressed in their visitation with the children. Finally, the court found that the children, who had been placed with their biological aunt and her husband, were doing well and had made significant improvements. Based on these and numerous other findings, the court concluded that parents' ability to care for the children had stagnated and that termination of their rights was in the children's best interests. These appeals followed.[*]

Parents assert that their failure to address any of the expectations in the disposition order was based on factors beyond their control. According to parents, DCF should have paid their rent, overdue electric bill, and transportation expenses, which would have helped them in their reunification efforts. Father argues that his parenting shortcomings are directly tied to poverty and lack of resources. At the same time, father maintains that he made "real progress" toward reunification, pointing to the fact that he had lived in the same apartment for a year at the time of the final TPR hearing. He cites his own testimony that he now abstains from alcohol and that he is engaged in treatment, and points to other evidence that he believes supports his position. Parents also argue that the court erred in evaluating the statutory best-interest factors. They assert that the court's conclusion was impermissibly based on their economic status and the perception that the State had already allocated enough resources to parents. Additionally, parents argue that the court improperly engaged in a "backward-looking" analysis.

As we have often repeated, when the termination of parental rights is sought, the trial court must first find that there has been a substantial change in material circumstances, and second, that termination of parental rights is in a child's best interests. In re B.W., 162 Vt. 287, 291 (1994); see 33 V.S.A. §§ 5113, 5114. "[A] substantial change in material circumstances is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re B.W., 162 Vt. at 291 (quotation and punctuation omitted). To determine a child's best interests, the court must consider four statutory factors, the most important of which is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period. 33 V.S.A. § 5114; see In re B.M., 165 Vt. 331, 336 (1996). As long

---

[*] Father asserts that "[b]ecause of the positive relationship between the parents and the children, the termination of parent child contact was stayed pending the appeal of this case." The trial court made no such finding, and in fact, it ultimately denied parents' request to stay its decision pending appeal.

as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.). We do not review the court's conclusions de novo, as father posits, nor do we reweigh the evidence on appeal. In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights[.]").

We reject parents' characterization of the trial court's order. The court did not base its decision on parents' economic status but instead on their complete failure to comply with the expectations set forth in the disposition order. Parents, not DCF, are responsible for their behavior. See In re S.R., 157 Vt. 417, 421-22 (1991) (rejecting argument that parents' stagnation was caused by factors beyond their control where child-protection agency worked with parents for more than three years providing services, and despite these efforts, parents showed no improvement in their ability to provide safe environment or care properly for child). As the trial court explained, DCF had been involved with the family for over six years regarding inappropriate housing, violence in the home, and parents' inability to meet the children's needs. Since 2010, DCF had made referrals to the family for mental health, substance abuse, domestic violence, and other services, including organizations to support the parents in meeting the children's needs. Parents were unable to consistently engage in services to make necessary changes so as to be able to resume their parental duties. Mother delayed in accessing consistent mental health services until after the TPR petition was filed, and by the time of the final hearing, she had only begun to address her significant mental health issues. Father delayed in obtaining substance abuse treatment and did not engage at all with recommendations regarding domestic violence. Parents continued to lack safe and stable housing, and indeed, putting aside the lack of hot water or ability to serve hot meals, they failed to understand the risks presented to young children from extensions cords running to a neighbor's apartment. Parents also continued to lack insight into the children's basic and special needs due in part to their failure to participate in programming. Even with programs such as FTC, they were unable to make progress in their parenting skills. We agree with the court that the evidence overwhelmingly established that parents stagnated in their ability to parent the children.

The court's analysis of the best-interest factors is equally supported by its findings and by the record. Again, the court did not base its decision on parents' economic status, or on any "perception that the state had already allocated enough resources to these parents." Instead, based on its findings, the court determined that the children could not rely on their biological parents to meet their basic and other needs, as evidenced by, among other things, mother's refusal to believe R.C.'s disclosure of sexual abuse, mother's inability to rebuild trust with R.C., and parents' continuing inability to discipline the children or control their unsafe behaviors. The court further found that the children had adjusted well to their foster home, and the foster parents addressed their needs. The court also found that the children had adjusted well to their school and community. As to the most important factor, the court concluded that parents were no closer to resuming their parental duties than they had been when the case began, and that a reasonable time for them to show improvement had passed. Finally, the court found that although parents loved the children, they had not played a constructive role in their lives. It noted that parents subjected the children to physical and sexual abuse, domestic violence, and neglect; they did not believe the children when they reported physical or sexual abuse; and they did not stand up to protect the children from further harm. Parents raise various arguments as to why the court erred in reaching its conclusions, all of which essentially challenge the trial court's assessment of the credibility of witnesses and the weight of the evidence. See In re A.F., 160 Vt. 175, 178 (1993) (recognizing that it is exclusive role of trial court to assess credibility and weigh evidence). Parents' disagreement with the court's conclusions does not demonstrate error. See, e.g., Meyncke v.

3

Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (mem.) (explaining that arguments which "amount to nothing more than a disagreement with court's reasoning and conclusion" do not make out case for an abuse of discretion). The court's findings amply support its conclusion that termination of parents' rights was in the children's best interests.

We also reject parents' assertion that the court's best-interest analysis was impermissibly backward-looking or that the court "predetermined" certain issues. See In re B.M., 165 Vt. at 337 (recognizing that court "must consider the parent's prospective ability to parent the child," rather than "beg[ging] the question by concluding that a reasonable period of time ended years before the termination-of-parental-rights hearing"). It is evident that the court's analysis was forward-looking and based on the evidence presented at the termination hearing. The court specifically found that parents were currently incapable of meeting the children's behavioral challenges, keeping up with developmental stages, rebuilding the children's trust, and helping them to make gains regarding the trauma that they had been subjected to during their lives, and that it was unclear if they would ever be able to resume their parental duties. The court similarly did not "predetermine" whether parents had played a constructive role in the children's lives. According to parents, notwithstanding the sexual and physical abuse of the children, they played a constructive role "going forward." This argument simply wars with the court's assessment of the weight of the evidence. There is ample evidence to support the court's conclusion that, overall, parents have not played a constructive role in the children's lives. Finally, we reject father's characterization of the court's analysis of the children's adjustment to their home, school, and community. The court did not conclude, explicitly or implicitly, that "parents' bond with the children was outweighed by [parents'] poverty." We find no error in the court's decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice