*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-318

JANUARY TERM, 2017

| | |
|---|---|
| In re M.T. & T.T., Juveniles | APPEALED FROM: |
| | Superior Court, Chittenden Unit, Family Division |
| | DOCKET NO. 73/74-3-14 Cnjv |
| | Trial Judge: James R. Crucitti |

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal from a family court judgment terminating their parental rights to the minors M.T. and T.T. Mother contends the court's assessment of the parent-child bond was inaccurate. Father contends the court improperly terminated his parental rights based on factors beyond his control. We affirm.

As found by the trial court, the facts may be summarized as follows. The children, T.T and M.T., were one and two years old, respectively, when the Department for Children and Families (DCF) filed a CHINS petition in March 2014 based on concerns that the parents' substance abuse was affecting their ability to safely parent the children. DCF had been involved in this matter since 2013, when T.T. was born with cocaine and THC in her system; a follow-up assessment early in 2014 found that mother was continuing to use drugs and neglect the children.

The court initially entered a conditional care order entrusting the children to parents with a number of conditions to address both parents' substance abuse, including requirements that they obtain treatment, submit to periodic drug testing, sign medical releases, work with DCF to obtain appropriate housing, and engage in parent education. In May 2014, the parents stipulated to an adjudication of CHINS. The following month, however, the court granted DCF's motion to revoke the conditional care order based on the parents' failure to comply with the conditions. The children were placed in foster care, where they have since remained.

In late September 2014, the court adopted a disposition plan with concurrent goals of reunification within six to nine months, or adoption. In late March 2015, DCF recommended changing the plan to adoption, based on both parents' continued drug use, failure to consistently attend or make progress in treatment and counseling, and failure to make progress in their parenting abilities. DCF filed a petition to terminate parental rights the following month. In late September 2015, the parents had a third child, K.T., who was born with cocaine in her system. She was taken into DCF custody at birth, and is the subject of a separate CHINS proceeding.

Following a two-day hearing, the court granted the petition. Based on extensive findings, the court found a significant and material change of circumstances based on the parents' failure to

make progress in addressing their substance abuse issues, engaging with service providers, and developing their parenting skills and understanding of the children's needs. In assessing whether termination of parental rights was in the children's best interests, the court found that, while the parents love their children and "the children have some bond with their parents," their interactions had generally not been healthy; the parents' very sporadic visits had caused the children "significant distress;" their inadequately addressed drug and mental health issues had "negatively impacted the children;" and their visits, when they occurred, had been stressful for the children and marked by what service providers characterized as "blaming and shaming" the children. Their inconsistency had "a significant and negative impact on the children." The children had since bonded with their foster parents and siblings, were doing better emotionally, and were well adjusted to their preschool and community. The court further found that, although mother had made some progress with her substance addictions, neither parent had adequately progressed in treatment, developed parenting skills, or gained an understanding of the children's emotional needs sufficient to resume parental responsibilities. Accordingly, the court concluded that termination of the parents' residual parental rights was in the best interests of the children. These appeals followed.

In reviewing a decision to terminate parental rights, this Court's "role is not to second-guess the family court or reweigh the evidence, but rather to determine whether the court abused its discretion." In re S.B., 174 Vt. 427, 429 (2002) (mem.). We will not disturb the court's findings unless clearly erroneous, nor its conclusions if reasonably supported by the findings. In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29.

Mother contends that, in finding that the children "have some bond with their parents," the court failed to consider mother's relationship individually with the children or to recognize that their bond with her was "much stronger" than with father. The record does not support the claim. The court made a number of findings specifically concerning mother's relationship with the children, noting that service providers had observed that she was easily overwhelmed and emotionally overwrought during visits, and responded by tending to focus on the infant K.T, which was upsetting to M.T. and T.T., whose need for mother's attention and affection were unfulfilled. M.T. would act out to get mother's attention, who was often unresponsive or needed prompting to respond, and M.T. would then turn to the Easter Seals supervisor for reassurance. Although mother cites some testimony by the Easter Seals supervisor that the children tended to seek mother's attention more than father's during supervised visits, the record does not support the claim that the children had a much stronger bond with mother than father, or that the court failed to provide an individualized assessment of mother's relationship with the children.

Mother also asserts that the trial court improperly relied on hearsay evidence in finding that the children had "begun to voice that they do not want to go to visits." The finding was based on a DCF social worker's testimony that she had received reports from the children's daycare that the children had vocalized their desire not to attend visits when they saw the Easter Seals van arrive. Mother did not object to the testimony, and therefore failed to preserve the claim for review on appeal. In re D.C., 157 Vt. 659, 660 (1991) (mem.). Moreover, hearsay evidence is admissible in a termination proceeding, although it may not be the "sole basis for termination of parental rights." In re A.F., 160 Vt. 175, 181 (1993); see also 33 V.S.A. § 5317(b) (providing that "[h]earsay may be admitted and may be relied on to the extent of its probative value"). Although mother claims with little support that the testimony here was unreliable, we need not decide the issue, as there is nothing in the court's decision to suggest that the finding at issue formed any significant basis for the court's decision, which was otherwise amply supported. See In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508 (noting that court's decision will not be reversed, even if some findings are

2

unsupported, where other findings adequately support judgment). Accordingly, we find no basis to disturb the judgment as to mother.

Father contends the trial court improperly terminated his parental rights based on factors beyond his control, to wit, his "medical issues, poverty, and housing struggles" and mother's "struggle with her addiction." See In re S.R., 157 Vt. 417, 422 (1991) (noting that termination of parental rights may not be based on "factors beyond the parents' control"). We find no support for the claim. The court's decision, as noted, was based principally on father's failure to adequately address the longstanding substance abuse issues that had negatively affected his care for the children, his failure to consistently attend visits and engage with service-care providers to develop adequate parenting skills and an understanding of the children's emotional needs, and his failure even to recognize the concerns that led to State intervention.[*] The record does not show that these failures were attributable to factors beyond father's control. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

---

[*] Father testified at the hearing that DCF's intervention was based on "[n]o proof, no evidence, no facts" and was motivated by "retaliation tactics." **Tr. 3/11/16 at 145-146**

3