*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-362

FEBRUARY TERM, 2017

| | |
|---|---|
| In re A.L., D. L. and D.L., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Orleans Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 34/35/36-9-14 Osjv |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to A.L., D.L., and D.L., born in October 2010, January 2009, and February 2012, respectively. On appeal, mother argues that the court failed to consider the relevance of the actions of the Department for Children and Families (DCF) in its determination of whether there was a substantial change in material circumstances due to stagnation. We affirm.

The three children came into DCF custody in September 2014 after mother left them unattended to spend time with her then boyfriend. Following a hearing, the court found that they were children in need of care and supervision (CHINS) for lack of proper parental care. At disposition, custody was transferred to DCF. The case plan included goals for mother related to domestic violence, alcohol and drug dependence, and mental-health.

DCF moved to terminate mother's parental rights in November 2015. A hearing was held in July 2016. In a written order, the court found the following. After the children came into custody in September 2014, mother did not have meaningful contact with them until May 2015 after she moved back to Orleans County after having been assaulted by her boyfriend. She had only three supervised visits with the children between December 2014 and May 2015. After mother began more regular visits in May 2015, she started family-time coaching. The coach observed that mother was generally able to take care of the children. In August 2015, mother appeared to be impaired at a visit—she was speaking very quickly, was agitated, and wanted to discuss adult issues in front of the children. The DCF caseworker informed mother that visits would cease until mother was able to meet with her and discuss what had happened at the visit. No meeting occurred and the family-time coach closed the case three weeks later. During the summer of 2015 mother had intermittent visits. The children were upset with mother's absence and had difficulty with transitions, and mother "had trouble understanding her role in their suffering around the transitions."

DCF did not move visits beyond supervised contact because mother had not completed the other case-plan goals. Mother had alcohol and drug dependence and was required to provide

urinalysis results. These were not provided. Mother had an adversarial relationship with her initial DCF caseworker. The caseworker was unable to obtain urinalysis results from mother and in general had trouble obtaining functional releases, which hampered DCF's efforts.

The case plan required mother to obtain a domestic violence screening and follow up with the DCF domestic violence resource person. The domestic-violence requirement stemmed from the facts that mother's boyfriend was charged with assaulting her and the children reported witnessing domestic violence. Mother had one preliminary meeting with a domestic violence specialist and then did not follow through on this requirement.

Mother also did not complete a mental-health assessment. She did engage a mental-health counselor, but did so late in the process and only to a limited degree. In a year, she saw the counselor six times. She also did not report her counseling to DCF.

In October 2015, DCF filed a petition to terminate parental rights.

After mother's DCF caseworker retired, a new caseworker was assigned in November 2015 and he reinstated family-time contact. The court credited the coach's testimony that while mother was appropriate with the children most of the time, mother lacked the skills to manage all three children at once.

Based on these findings, the court concluded that there was a change in circumstances and that termination was in the children's best interests. The court found that mother's inadequate progress amounted to stagnation. The court further concluded that mother's parenting skills had not sufficiently improved for her to safely resume parenting within a reasonable period of time. The court explained that mother failed to understand how her own conduct had affected the children, particularly the domestic violence and substance abuse, and she remained unable to parent all children together. Mother did not play a constructive role in the children's lives—she had little contact with them when they were first taken into DCF custody and had failed to re-engage to a level necessary to provide them with the stability and security they needed. They had special needs as a result of the traumatic experiences they had while in mother's care, and mother has not demonstrated that she understood this or how to care for them. Mother appeals.[1]

To grant termination of parental rights when there is an existing disposition order, the court must first find there was a substantial change in material circumstances and second that termination is in the children's best interests. In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.). A change in circumstances can be shown by stagnation—the passage of time without improvement in the parent's ability to care for the children. Id. On appeal, this Court affirms the family court's findings unless they are clearly erroneous and the court's conclusions if supported by the findings. Id.

Mother argues that the court failed to consider the relevance of DCF's actions to its determination of whether there was stagnation. See In re S.R., 157 Vt. 417, 421-22 (1991) (noting

_____

[1] Father has not had contact with the children since the DCF case began. Father did not appeal the order terminating parental rights.

that "stagnation caused by factors beyond the parents' control could not support termination of parental rights"). Mother claims that DCF's actions caused her progress to stagnate because DCF did not allow her to move to unsupervised visitation. Mother contends that after DCF filed for termination DCF stopped assisting mother and this led to lack of progress.[2] Mother points to the court's finding that "the effort to reunify substantially ceased after the [termination petition] was filed." Mother also relies on the court's statement that by the time the termination petition was filed mother's progress towards reunification was inadequate and that the situation did not improve by the time of the final hearing.

The evidence does not support mother's claim that it was DCF's actions, and not her own, which resulted in both the decision not to move to unsupervised contact and mother's lack of progress in general. DCF's decision not to allow unsupervised contact with mother rested on the fact that several parts of the case plan remained unaddressed, including those requirements related to substance abuse, mental health, stable housing, and domestic violence. The only area in which the court found some responsibility on DCF's part was related to substance abuse, where the court found that the lack of releases was not solely mother's fault. Nonetheless, the court did not find that the lack of improvement in this area was the critical fact, emphasizing that the problems that mother faced were "substantively very deep." Further, the court acknowledged that mother had a discordant relationship with her caseworker, but did not blame DCF, finding that this was due to mother's antagonism toward her caseworker and DCF in general.

The court found that the case plan goals were clear and that mother did not comply with several of them. Further, the court's findings reflect that mother's lack of progress on these issues was a result of mother's own behavior. The case-plan goals regarding domestic violence, mental-health counseling, and parenting stemmed from the domestic violence involved in mother's relationship with her boyfriend and mother's action of leaving the children unattended while with her boyfriend. This behavior resulted in trauma to the children. Older D.S. would wake up screaming in the night or crying from nightmares and he drew pictures of mother being kicked by her boyfriend while the children watched scared. He was sad, sullen, angry, and depressed. A.S. was clingy and demanded constant attention. She recounted watching the boyfriend beat up her mother and that her older brother had to look after her and her younger brother. A.S. had extended screaming and crying tantrums. Younger D.S. and A.S. needed to be able to see each other at all times, including nap time at daycare. Mother denied that domestic violence was a factor in her relationship, did not engage in domestic-violence assessment, and continued to lack an understanding of how her own actions had caused damage to her children. Mother did not have a mental-health assessment. While evidence was provided at the termination hearing that mother had a counselor, mother did not communicate this relationship to DCF and her efforts to obtain counseling were "late and limited." Despite family-time coaching, provided by DCF even after the termination petition was filed, mother was unable to parent all three children at the same time.

---

[2] In a supplemental filing, mother cites to this Court's recent decision in In re D.S., 2016 VT 130, to support her argument that DCF prematurely withdrew services. The evidence in this case does not support such a finding. The initial case plan, filed in December 2014, had a goal of March 2015. DCF continued to provide services to mother throughout that time. Even after the termination petition was filed, DCF provided mother with a family-time contact and a coach.

Finally, mother did not have a stable living situation. The lack of progress in all of these areas resulted from mother's own action or inaction.

In sum, the court's order demonstrates that the court fully considered whether mother's stagnation was caused by circumstances beyond her control and its finding that stagnation was a result of mother's own actions is supported by the evidence.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4