VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-279



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2024

In re M.L., Juvenile        }   APPEALED FROM:
(D.W., Mother\*)          }
                      }   Superior Court, Windham Unit,
                      }   Family Division
                      }   CASE NO. 21-JV-00786
                            Trial Judge: Jennifer Barrett

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights in son M.L., born in April 2020.[*] We affirm.

The record reflects the following.  In June 2021, the State filed a petition alleging that M.L. was a child in need of care or supervision (CHINS) and he was placed in the custody of the Department for Children and Families (DCF) pursuant to emergency- and temporary-care orders. In November 2021, mother stipulated that M.L. was CHINS at the time of the State's petition because she had indicated that she did not intend to parent him and left him in the care of his maternal grandmother, whose parental rights to mother had been terminated.  Mother agreed that maternal grandmother had a history of exposing her own children to unsafe individuals and was at the time residing with two men about whom mother had concerns.

Mother expressed an intent to reunify with M.L., and the family division issued a disposition order in February 2022 with a goal of reunification with mother or father by May 2022.  The case plan adopted by the court called for mother to, among other things, receive consistent mental-health treatment and comply with the treatment recommendations, obtain a developmental assessment and participate in any recommended services, secure stable housing, demonstrate financial stability, and engage with M.L.'s providers.

The State petitioned to terminate parents' rights in November 2022.  A hearing on the petition was held over two days in April and May 2023, and the family division subsequently issued a written decision containing the following factual findings.

After M.L. was placed in DCF custody in June 2021, mother moved to the state of Georgia and remained there through the time of disposition.  While in Georgia, she had only

---

[*] Father's rights were also terminated; he does not appeal.

virtual visits with M.L. Mother returned to Vermont in March or April of 2022, and DCF offered her one-hour supervised visits with M.L. twice a week. Mother attended less than half of the ninety-seven visits offered between April 2022 and March 2023. Though mother identified transportation issues as one of the reasons for the missed visits, she did not accept DCF's offer of transportation assistance. As a result of mother's inconsistent attendance, visits never increased in duration or frequency, and mother never progressed to unsupervised visits.

In September 2022, screening revealed that M.L. has a rare genetic mutation which may cause developmental delay and epilepsy. M.L. has experienced delays in the development of his speech, language, and fine-motor skills, and he receives services such as physical and speech therapy. Mother never engaged with M.L.'s school or any of his service providers and did not attend any of his medical appointments.

Mother's housing remained unstable throughout the pendency of the case. She moved frequently, living with friends in Georgia, with father, with maternal grandmother, with a supportive person, with her brother, and in emergency housing.

Mother has an intellectual disability and has been diagnosed with post-traumatic stress disorder, bipolar disorder, seizure disorder, anxiety, and depression. While in Georgia, she completed an intake for a mental-health and developmental assessment but declined services and did not receive therapy. After returning to Vermont, mother completed an intake with Health Care & Rehabilitation Services (HCRS) and was assigned a therapist. Her case was closed during the summer of 2022 due to her lack of attendance at therapy sessions. Mother had been taking her mental-health medications since May 2022 and was engaged with a nurse practitioner to manage those medications. Mother completed a developmental assessment with HRCS and was deemed eligible for services including case management, transportation, and in-home services, but was resistant to availing herself of these supports. She did not comply with the services recommended in the assessment.

Mother uses a payee. She repeatedly selected inappropriate payees who took advantage of her, impacting her financial stability. Though it was recommended that mother use HCRS as a professional payee, she declined to do so.

Based on these findings, the family division concluded that there was a change in circumstances due to mother's stagnation, observing that she never progressed beyond the beginning stages of her case plan. The trial court then weighed the statutory best-interests factors. Though mother and M.L. had a bond, she did not play an active role in supporting his welfare and there was a significant risk of future abandonment. M.L. was bonded with his foster family and had adjusted to his home, school, and community. Though the trial court commended mother for resuming consistent visits with M.L., securing emergency housing, and reengaging with her therapist between the first and second days of the termination hearing, it concluded that this progress was insufficient to support the conclusion that mother would be able to parent M.L. within a reasonable time. The family division concluded that termination of mother's parental rights was in M.L.'s best interests and granted the State's petition. This appeal followed.

When termination of parental rights is sought after initial disposition, the family division's analysis proceeds in two parts. In re M.P., 2019 VT 69, ¶ 24, 211 Vt. 20. The trial court must first determine whether there has been a change in circumstances; if so, it must consider whether termination of parental rights is in the child's best interests. Id.; see also 33 V.S.A. §§ 5113(b), 5114(a). Changed circumstances are "most often found when a parent's ability to care properly for the child has either stagnated or deteriorated over the passage of

time." In re K.G., 2023 VT 51, ¶ 30 (quotation omitted). Provided that the court applied the appropriate standard, we will not disturb its findings unless they are clearly erroneous and will affirm its conclusions if supported by those findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

First, mother argues that the family division's findings that she had not established stable housing, demonstrated financial stability, or secured a stable payee are clearly erroneous. "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence." In re A.F., 160 Vt. 175, 178 (1993).

Mother contends that there was insufficient evidence to support the finding that she had not obtained stable housing because she testified that she received a hotel housing voucher between the April and May termination hearing dates, was assured that she would continue to receive housing due to her disability, and was working with a case manager to secure non-transitional housing. But while mother testified that she believed the voucher program would not be impacted by the end of COVID-19 assistance because of her disability, the DCF worker assigned to the case did not share this understanding. Instead, the DCF worker testified that mother would be required to check out of the hotel on July 1, 2023. This testimony supported the finding that mother's housing remained unstable despite her participation in the voucher program. It is for the trial court, not this Court, to determine the appropriate weight to assign to the evidence. Id. Further, mother's testimony that she was working to secure non-transitional housing in the future was irrelevant to the court's assessment of the stability of her current housing. The finding that mother had not established stable housing was not clearly erroneous. See In re G.S., 153 Vt. at 652.

Mother also argues that the court erred in finding that she had not demonstrated financial stability or established a stable payee because she testified that she had money left over each month after selecting a new payee. The trial court found that mother had not demonstrated consistent financial stability but it did not find, as mother asserts, that she failed to establish a stable payee. Instead, it found that mother had repeatedly selected inappropriate payees who took advantage of her, impacting her financial stability. Though mother testified that she felt her new payee was working out well because she had money left over each month, the evidence about the new payee's suitability for this role was mixed. The new payee was one of the individuals living with maternal grandmother when M.L. was taken into custody and, at that time, mother had expressed concern that he could "fly off the handle." The DCF worker testified that she did not believe he was a suitable person to fill the role of payee and that his appointment created risk. And though the new payee testified at the termination hearing, the family division did not find his testimony credible and largely discounted it. In light of these considerations and mother's historical selection of inappropriate payees, the court's finding that mother had not yet demonstrated financial stability was not clearly erroneous. See id.

Finally, mother argues that the court erred in concluding that she had stagnated because, to the extent she had an obligation to obtain private housing, her inability to do so was attributable to the pandemic and the state's housing crisis, which are factors beyond her control. See In re S.R., 157 Vt. 417, 421-22 (1991) (recognizing that stagnation caused by factors beyond parent's control cannot support termination of parental rights). The court did not find that mother was obligated to obtain private housing and mother provides no record support for this assertion. See V.R.A.P. 28(a)(4) (requiring that arguments in appellant's brief be supported by "citations to the . . . parts of the record on which the appellant relies"). Instead, the court found that mother had not obtained stable housing. As set forth above, this finding was not clearly

erroneous, and mother has not argued that her failure to obtain stable housing was due to factors beyond her control. The family division did not abuse its discretion in concluding that there had been a change in circumstances due to mother's stagnation.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

4