### In re B.W., Juvenile

[648 A.2d 652]

No. 93-263

Present: Allen, C.J., Gibson, Dooley and Johnson, JJ.

Opinion Filed July 1, 1994

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Harrison B. Lebowitz*, Assistant Attorney General, Waterbury, for Appellee Department of Social and Rehabilitation Services.

*Robert M. Paolini* of *Martin & Paolini, P.C.*, Barre, for Appellant R.W.

**Gibson, J.** Father appeals from an order of the Windham Family Court terminating his parental rights and responsibilities with respect to his daughter, B.W. We affirm.

B.W., born in 1982, came into the custody of the Commissioner of Social and Rehabilitation Services (SRS) in August 1990, when the court issued first an emergency detention order, then a decision finding her to be a child in need of care and supervision (CHINS). She has remained in SRS's custody ever since. The court found that B.W. had been sexually abused, starting at age 7, by her brothers, then ages 13 and 9, and that the father had failed to protect his daughter because he was abusing drugs to such a degree that he was either unaware of the sexual misconduct or just did not care.

Disposition proceedings did not immediately follow the CHINS determination, due in part to father's admission to the Vermont State Hospital (VSH) after taking a drug overdose. Following hearings on disposition, the family court transferred legal custody and guardianship of B.W. to the Commissioner of SRS on April 2, 1991, and adopted a plan of services for her.

On May 28, 1992, SRS filed a petition to terminate residual parental rights (TPR). During discovery, father opposed the production of records from VSH regarding his therapy and from a youth services agency that had assisted the family. Following a hearing, the court ordered release of the records. The TPR hearing was conducted thereafter over a four-day period in January and February 1993.

The case plan originally approved by the court contemplated reunification of B.W. and her father, who throughout her placement with SRS adamantly rejected counseling, treatment and services offered to him and other members of the family, maintaining that he did not need to change, nor did his sons, and that B.W.'s victimization was really her own fault. At the TPR hearing, the court found, based on the testimony of a number of expert witnesses, that father would be unable to resume parenting within a reasonable period of time. The court found further that, since coming into SRS's custody, B.W. had improved both academically and socially, had grown in self-confidence, and was a happier child. The court also found that her behavior deteriorated following visits with her father, but improved considerably after contact with her father ceased altogether.

The court found troubling the fact that B.W. still felt the sexual abuse while in the family household was her own fault and that there was nothing to prevent her from being revictimized in father's home.

There was abundant evidence of father's unyielding refusal to comply with the case plan. A few months before the disposition hearing, he entered therapy, one of the plan's recommended services, but progress was slow. The court found that even if father came into total compliance with the case plan, it would take two to three years before visits could be resumed because of his entrenched attitudes about B.W.'s victimization. The court concluded that father's two years of opposition to services made "the likelihood of therapeutic resolution [of the sexual abuse issue] either uncertain or so far in the future as to be against the permanency and best interests" of B.W.

The court granted the TPR petition, concluding that the evidence supporting termination was "completely overwhelming." The court also terminated parental rights as to B.W.'s mother, but only the father has appealed the court's order.

## I. Release of Records

█ Father argues first that the court erred in ordering release of his therapy and medical records, contending that the court erroneously relied on the implied waiver of physician-patient privilege set forth in *In re M.M.*, 153 Vt. 102, 105, 569 A.2d 463, 465 (1989), *cert. denied*, 494 U.S. 1059 (1990). Father is correct that following this Court's decision in *In re M.M.* subsection (7) was added to V.R.E. 503(d) to "overrule the implied waiver analysis" of that case. Reporter's Notes, V.R.E. 503(d)(7). But his suggestion that the court relied on *In re M.M.*, rather than the rule, in releasing the records is erroneous. The court fully addressed the procedural and substantive requirements of V.R.E. 503(d)(7), 42 U.S.C. §§ 290dd-3 (confidentiality of alcohol-abuse patient records), 290ee-3 (confidentiality of drug-abuse patient records), and 42 C.F.R. §§ 2.54–2.64 (disclosure of substance-abuse patient records without patient consent or under court order),\* finding that the requirements of both V.R.E. 503(d)(7) and the federal law had been met.

---

\* Federal law was implicated because of the issue of whether either of the two record-keeping institutions was a substance-abuse treatment center receiving federal funds, which would bring them under federal confidentiality rules. 42 U.S.C. §§ 290dd-3 and 290ee-3 have recently been consolidated at 42 U.S.C. § 290dd-2 (Supp. 1994).

■ Father also contends that the records were more than one year old at the time of hearing and that their prejudicial impact outweighed any probative value. It is clear that the court knew the records were a year old, and took due account of that fact. In any event, the evidence supporting the court's TPR decision was overwhelming, apart from the therapy and medical records. The central focus of the court was the pervasive abuse of B.W. over a lengthy period of time and father's unyielding resistance to any plan proposed to meet B.W.'s needs and to enhance his own personal development and parenting capabilities. The expert evidence evaluating the total family, separate and apart from father's medical and therapy records, was substantial and clear. The father's own records provided corroboration, but were not essential to the court's determination.

## II. Change of Circumstances

■ Father argues next that the trial court erred in concluding that there had been a substantial change in material circumstances, since there had not been sufficient evidence of "stagnation" on the part of father. As we have often stated, when termination of parental rights is sought, 33 V.S.A. § 5532(a) requires the court to conduct a two-step analysis: First, the court must find that there has been a substantial change in material circumstances; second, the court must find that the best interests of the juvenile require termination of parental rights. *In re J.R.*, 153 Vt. 85, 99–100, 570 A.2d 154, 161 (1989). Such findings must be supported by clear and convincing evidence and will withstand review in this Court unless they are clearly erroneous. *In re S.R.*, 157 Vt. 417, 421, 599 A.2d 364, 367 (1991).

■ The first step in the analysis, a substantial change in material circumstances, is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." *In re H.A.*, 153 Vt. 504, 515, 572 A.2d 884, 890, *cert. denied*, 498 U.S. 861 (1990). Stagnation may be shown "by the passage of time with no improvement in parental capacity to care properly for the child." *In re J.R.*, 153 Vt. at 99, 570 A.2d at 161. But as we stated in *In re A.F.*, 160 Vt. 175, 181, 624 A.2d 867, 871 (1993), "the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of changed circumstances warranting modification of a previous disposition order." Accord *In re M.M.*, 159 Vt. 517, 522-23, 621 A.2d 1276, 1279-80 (1993); *In re J.J.*, 143 Vt. 1, 5–6, 458 A.2d 1129, 1131–32 (1983).

■ In the present case, the trial court concluded that there had been a substantial change of material circumstances, as evidenced by the passage of two and one-half years of SRS custody and no improvement in father's parental abilities. The court found that father was not ready to take responsibility for parenting and protecting B.W. and that "it will take too long for him to recover his parenting skills to resume his relationship with his daughter." The court's findings were amply supported by clear and convincing evidence.

### III. Best Interests of the Child

Finally, father contends that SRS did not present clear and convincing evidence that termination of parental rights was in B.W.'s best interest, pursuant to the factors enumerated in 33 V.S.A. § 5540. He maintains that he will be able to resume his parental duties within a reasonable time. This second prong of the test, like the first, must be supported by clear and convincing evidence. See *In re S.R.*, 157 Vt. at 421, 599 A.2d at 367. That standard was met in the present case.

■ Against voluminous evidence that father has not begun to fathom the trauma visited on his daughter, he points to limited evidence that some supervised visits were appropriate for consideration under 33 V.S.A. § 5540(1). Such evidence, however, relates to visits occurring early in SRS's custody. Unmentioned are incidents of unpermitted contacts and inappropriate behavior by him that traumatized B.W., reactivated symptoms of victimization, caused her to act out inappropriately, and put her at renewed risk. He also omits mention of his daughter's request that contacts with him end. The evidence strongly supports the court's conclusion that "[B.W.'s] interaction and relationship with her father has been overtly destructive" and that termination of father's parental rights is in her best interest. Under the most optimistic scenario, involving a level of cooperation not to be assumed from the evidence, reunification with B.W. is years away, if it can be accomplished at all. The evidence was clear and convincing evidence that termination of parental rights is in the best interest of B.W.

*Affirmed.*