*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-449

MARCH TERM, 2011

| | |
|---|---|
| In re M.C., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 99-8-09 Bnjv |
| | |
| | Trial Judge: Karen R. Carroll |

In the above-entitled cause, the Clerk will enter:

Father appeals from the family court's order terminating his residual parental rights in M.C.[*] He argues that the court's findings are inadequate to support its conclusion that he stagnated in his ability to parent M.C. We affirm.

Parents have three children, two of whom have already been removed from their care due to neglect. A Connecticut court terminated parents' rights to their two-year-old in 2007, and to their twenty-month-old child in July 2009. Shortly after this second termination, parents moved to Vermont, apparently to avoid involvement of Connecticut social service agencies. In August 2009, mother gave birth to M.C., and the child was taken into custody of the Department for Children and Families (DCF) shortly after her birth via an emergency care order. This order indicated that the factors that led to the Connecticut termination decisions included an environment pervaded by domestic violence; drug use, including substantiated tests for opiates; and a significant history of depression on the part of mother that interfered with her ability to provide adequate care for the children.

M.C. was adjudicated as a child in need of care or supervision (CHINS) in December 2009 and continued in DCF custody with the goal of reunification. Pursuant to DCF's case plan, father was required to address his substance abuse, mental health and anger issues through therapy; work with service providers recommended by DCF and follow their recommendations; demonstrate an understanding of M.C.'s developmental needs and create a positive environment for her; attend to all of M.C.'s medical needs; obtain and maintain stable and clean housing; demonstrate financial stability; meet weekly with DCF to discuss the case plan; sign releases for information; attend all visitations and be on time; and refrain from criminal activity. In March 2010, parents decided to move back to Connecticut, notwithstanding DCF's warning that such a move was not in M.C.'s best interests. At that time, parents had not engaged in recommended services or visited with M.C.

In May of 2010, DCF moved to terminate parents' rights in M.C., and following a hearing, the court granted its request. The court found that father failed to meet any of the requirements set forth in the case plan. It noted, among other things, that parents fought regularly during supervised visitation

---

[*] Mother voluntarily relinquished her parental rights contingent on the termination of father's rights. She has not appealed from the family court's decision.

with M.C.; father had not obtained stable housing; he was not employed; he was not addressing his substance abuse and mental health issues; and he did not meet with DCF as directed. After moving to Connecticut, father did not call and ask about M.C. on a regular basis. The court also observed that M.C. was doing very well in her foster placement, and her foster parents sought to adopt her if possible.

Based on these and other findings, the court concluded that there had been a substantial change in circumstances since the date of the CHINS adjudication, namely that father demonstrated no improvement in his capacity to properly care for M.C. It essentially reiterated the findings set forth above. The court then considered the statutory best-interests factors, and concluded that each factor favored termination of father's rights. The court thus granted DCF's petition. This appeal followed.

On appeal, father argues that the court's findings do not support its conclusion that he stagnated in his ability to parent M.C. More specifically, he maintains that the court should have made more specific findings about his parental shortcomings to justify its decision.

As we have often explained, when the termination of parental rights is sought, the family court must first find that there has been a substantial change in material circumstances, and second, that termination of parental rights is in a child's best interests. In re B.W., 162 Vt. 287, 291 (1994). A substantial change in material circumstances is most often found when a parent's ability to care properly for the child has stagnated, which "may be shown by the passage of time with no improvement in parental capacity to care properly for the child." Id. (quotation omitted). On appeal, we will affirm the trial court's findings unless they are clearly erroneous, and we will affirm its conclusions if supported by the findings. In re B.S., 166 Vt. 345, 350 (1997).

The family court's conclusion regarding stagnation is well supported here. In conducting its analysis, the court properly considered whether father's behavior "substantially conformed with the expectations at the time of the CHINS adjudication and with [DCF's] case-plan." In re D.C., 168 Vt. 1, 4 (1998). While noting the concerns that led to the removal of two other children from his care, the court also explained in detail what was expected of father under the case plan here. The requirements of this plan are set forth above, and as previously stated, the court found that father failed to satisfy any of these requirements. The court recounted father's unsuccessful and sporadic visitation with M.C. It described how parents moved from one temporary housing situation to the next, and it explained that father remained unemployed while in Vermont and failed to show that he was employed in Connecticut. It found that he did not participate in substance abuse counseling or any meaningful mental health therapy. Indeed, father chose to move to another state, despite being warned that this would result in DCF no longer pursuing a goal of reunification. The record is replete with evidence, reflected in the findings, to show that father stagnated in his ability to parent M.C. We find no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice

2