*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-076

JUNE TERM, 2013

| | |
|---|---|
| In re H.B. and A.B., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 124/125-9-11 Frjv |

Trial Judge: Martin A. Maley

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his residual parental rights in children H.B. and A.B.  Mother voluntarily relinquished her parental rights.  Father argues that the court failed to make findings regarding what responsibility the court or the Department for Children and Families (DCF) bore for father's lack of engagement with respect to the case.  We affirm.

H.B. was born in September 2007, and A.B. was born in November 2008.  H. B. has cerebral palsy and requires special services to meet his developmental needs, including physical therapy.  The children came to DCF's attention in January 2010 after reports of domestic violence, substance abuse, and child neglect, including reports that parents were not following through with recommendations of medical providers.  In April 2010, DCF opened a case and provided services for the family.  Mother and father apparently broke up in August 2010.

Mother failed to follow through with the plan of services, and she could not provide a stable home environment for the children.  In September 2011, DCF filed a petition for an emergency care order, which was granted, and the children were taken into DCF custody.  DCF also filed a petition alleging that the children were in need of care or services (CHINS) due to mother's drug use, lack of parenting skills, father's absence, and mother's inability to cope with parenting her children.  Both parents were assigned counsel in September 2011.  Both attorneys were present at an October 2011 juvenile pre-trial hearing and at the December 2011 merits hearing on the CHINS petition.  Following the hearing, the children were adjudicated CHINS. Attorneys for both parents were also present at the January 2012 disposition hearing.[*]  At that time, the plan was reunification with mother by June 2012.  Reunification with father was not part of the plan, although DCF did have goals in the case plan for father.  In April 2012, a DCF caseworker met with father to discuss the steps necessary for him to complete the plan.  Father also attended a post-disposition review hearing in May 2012.

---

[*] Neither parent appealed the CHINS determination or the disposition order.

In August 2012, DCF filed a motion to terminate parents' residual rights. The following month, both parents attended a juvenile permanency planning hearing. Mother later relinquished her parental rights, and following a hearing in October 2012, the court terminated father's rights. It found as follows. Father was thirty-two years old at the time of the termination hearing. Father had not worked for a year leading up to the hearing, but indicated at the hearing that he had recently found employment. Father had not paid child support. He had not had stable housing in two years but reported that he was currently living with his cousin. Father admitted to using drugs, including marijuana, since he was ten years old. He had used opiates for the prior eight years. He had been an intravenous drug user. Father continued to use drugs. Father also had significant mental-health issues. He suffered from anxiety, depression, and memory loss. He had had prior drug treatments. He had a lengthy criminal record and had spent a total of twenty-six months in jail. Father did not visit the children after September 2011 when they were placed in DCF custody.

Father asked the court to "restart" the case plan because he was previously under the impression that the children would be reunited with mother. Father cited his housing, employment, and drug treatment, as evidence that he was prepared to parent H.B. and A.B. Father complained that he had only recently become aware of the court proceedings and had been in contact with DCF "too many times to count." The court found that a DCF caseworker met with father in April 2012. The caseworker provided father with a copy of the CHINS affidavit, and the disposition report and case plan. DCF discussed the need for father to submit to a drug assessment at that time. Father did not complete the assessment until September 2012.

The court found that the children were doing well in their foster placement. Initially, it was noted that the children were developmentally delayed. They were easily frightened, afraid of the dark, and had night terrors. They had behavioral issues and eating disorders. H.B. has significant special needs. As indicated above, he has cerebral palsy, is on an IEP at school, and requires speech, occupational, and physical therapy. He is provided a support person in the classroom and has home-based services. H.B. also has a heart murmur. H.B. is now up to date on all of his well-child checkups. Both children were doing well, physically and emotionally, and have adjusted to their new home, their extended family, and the community. The children's foster mother was committed to the children and sought to adopt them.

Based on these and other findings, the court concluded that there had been a real, substantial, and unanticipated change of circumstances since the prior disposition order, and that termination of father's rights was in the children's best interests. The court found that father had shown no improvement in his ability to properly care for the children and he had therefore stagnated in his ability to parent. While father claimed to now have stable housing and employment, the court found that he continued to struggle with significant substance abuse and mental health issues. He continued to have an unstable and unpredictable lifestyle, and he had had no contact with the children since 2011. Turning to the statutory best-interest factors, the court explained that the children had been in DCF custody since 2011. Father had not been parenting the children prior to them coming into custody and he had had no contact with them during their time in DCF custody. The court found that this was obviously a substantial period of the children's life and personal development. Meanwhile, the children had adjusted well to their home, school, and community. Their foster mother was committed to providing a safe and stable home for the children, and the children were doing very well in her care. While father

2

expressed love for the children, the court found no reasonable likelihood that he would be able to resume his parenting responsibilities within any reasonable period of time. He played no role in the children's lives. It was unreasonable, the court continued, for the children to wait for father to show signs that he could resume his parental responsibilities. The children needed permanency now. Thus, the court concluded by clear and convincing evidence that the children's best interests required termination of father's residual parental rights. Father appealed from this order.

Father argues on appeal that the court failed to make findings regarding a material issue. Specifically, he asserts that the court should have made findings as to whether the court or DCF was responsible for his lack of engagement with respect to the case. He maintains that the court should have weighed father's responsibility for having stagnated against the responsibility of other entities. Father also argues that his failure to provide the court with a viable address until May 2012 does not absolve the court of its responsibility for failing to provide him with notice of hearings prior to this date.

We reject these arguments. As we have often explained, when the termination of parental rights is sought, the trial court must first find that there has been a substantial change in material circumstances, and second, that termination of parental rights is in the child's best interests. In re B.W., 162 Vt. 287, 291 (1994). A substantial change in material circumstances is most often found when "the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." Id. (citation omitted). "Stagnation may be shown by the passage of time with no improvement in parental capacity to care properly for the child." Id. (quotation omitted). To determine the best interests of a child, the court must consider four statutory factors, 33 V.S.A. § 5114, the most important of which is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

The record here amply supports the court's conclusions that father had stagnated in his ability to parent and that termination of his residual parental rights is in the children's best interests. Indeed, father does not challenge any of the court's findings as clearly erroneous. As set forth above, father continues to have an unstable and unpredictable lifestyle, and he continues to struggle with significant substance-abuse and mental-health issues. He has had no contact with the children since 2011 and has played no role in their lives. The children needed permanency and could not continue to wait for father to make progress.

In reaching its conclusion, the court acknowledged father's claim that he had only recently become aware of the court proceedings and that he had contacted DCF "too many times to count." As to the first issue, it found on the record that father's position was not credible. There is no dispute that father was aware of the TPR proceedings. He appeared and testified on his own behalf. In fact, the hearing was continued at father's request to allow him to present additional evidence. Father failed to appear at the continued hearing, however, and his attorney was unable to reach father using the contact information father provided. As indicated above, moreover, father has been represented by counsel since September 2011. Father knew that the children had been taken into DCF custody, and knew as of April 2012 that DCF had created a

3

case plan that included goals for him. These goals included obtaining safe and stable housing and maintaining sobriety. Despite his knowledge of the case plan, father wholly failed to comply with its requirements. It was father who failed to provide the court with valid contact information, see 33 V.S.A. § 5311(f) ("The parent shall be responsible for providing the court with information regarding any changes in address."), and father who failed to maintain regular contact with DCF. DCF attempted to accommodate father's unstable living situation, asking him to call each week with updated contact information. As father testified, he provided DCF with his updated contact information for a two-week period and then stopped. The court did not need to make findings as to any role played by DCF or the court regarding father's parental shortcomings. There can be no dispute that father bears sole responsibility for his decisions, including his continued drug use, his unstable lifestyle, and his complete failure to visit the children while they were in custody. Cf. In re S.R., 157 Vt. 417, 421-22 (1991) (recognizing that that stagnation cannot be based on factors beyond a parent's control). The record here overwhelmingly supports the court's conclusion that father stagnated in his ability to parent and that termination of father's rights is in his children's best interests.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice