*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2014-293

FEBRUARY TERM, 2015

| | |
|---|---|
| In re B.K., Juvenile | APPEALED FROM: |
| | |
| | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| | DOCKET NO. 138-4-11 Cnjv |
| | |
| | Trial Judge: Allison Sheppard Arms |

In the above-entitled cause, the Clerk will enter:

In this child-neglect proceeding, mother appeals the family court's order modifying a prior disposition order by transferring custody of juvenile B.K. from mother to father. On appeal, mother argues that the family court's admission of hearsay statements by B.K.'s therapist regarding B.K.'s diagnoses and needs resulted in reversible error. We affirm.

B.K. was born in September 2003. In April 2011, a petition was filed alleging that B.K. was a child in need of care or supervision (CHINS) due to lack of proper parental care. The State subsequently also alleged that B.K. was CHINS because he was beyond the control of his mother, and mother stipulated to CHINS on this basis. The court transferred custody of B.K. to his maternal grandfather subject to a conditional custody order. The goal of the initial disposition order was reunification with mother.

Father, who had not seen B.K. since September 2009 when he went to jail, first appeared in the case in May 2011 shortly after his release from jail. Father became increasingly active throughout the CHINS proceedings and was granted parent-child contact.

In January 2013, the court returned custody of B.K. to his mother under a conditional care order, specifying parent-child contact for father. There were several post-disposition review hearings, which resulted in an order granting father increased parent-child contact. In October 2013, the court held a hearing, and adopted a new case plan with concurrent goals of reunification with mother or transfer of custody to father. Father moved for transfer of custody in January 2014. Father was living with his wife and two small children and employed. The court viewed this motion as one to modify the prior disposition order, and held a hearing over three days.

The court issued a lengthy written decision. The court found that while mother had shown some progress, she had not successfully engaged in case-plan recommendations. The case plan goals required mother to participate in therapy, follow treatment recommendations, provide releases to DCF, ensure B.K.'s medical and therapeutic needs were met and follow recommendations of B.K.'s treating physician, work with family-support programs, and follow parent-child contact orders. An Intensive Family Based Services (IFBS) program was offered to

mother, but mother was unsuccessful in completing the program. The program recommended that mother set limits and age-appropriate expectations for B.K., work on communication with father, refrain from engaging in adult conversation around B.K., and address her mental-health needs. The court found mother did not successfully engage in IFBS, or make progress on reaching the goals.

Because concerns remained at the end of IFBS, both parents were referred to Easter Seals. As to mother, Easter Seals focused on the unfinished work from IFBS. One identified concern was B.K.'s schedule. The counselor testified that B.K.'s therapist had reported that B.K. felt he did not have a home and was over scheduled with too many transitions between households. B.K. was spending overnights with his grandfather, his mother and his father. The counselor recommended that B.K. spend school nights at either mother or father's, and that some of B.K.'s activities be eliminated. The court found that mother had not made efforts to reduce the adverse impact of B.K.'s disruptive schedule. The court found that mother did not engage with Easter Seals—mother was resistant to ensuring B.K. had his medication while in father's home, had not made progress in limiting adult conversation around B.K., and did not engage in opportunities to improve her parenting techniques.

The court found that father actively engaged with Easter Seals, was open to and implemented suggestions. Father set expectations for behavior, and followed through on discipline. The court found that father's ability to care for B.K. had improved, and that B.K. had healthy and growing relationships with the members of father's household.

Based on these findings, the court concluded that mother's lack of progress amounted to a change in circumstances. See 33 V.S.A. § 5113 (allowing court to modify prior disposition upon a change in circumstances); In re B.W., 162 Vt. 287, 291 (1994) (explaining that change is circumstances is most often found when parent's ability to care for child has "stagnated or deteriorated" (quotation omitted)).

The court further concluded that a transfer of custody to father was in B.K.'s best interests. The court found that mother was important in B.K.'s life, but that his interaction and relationship with mother had not improved. The court found that mother had had access to numerous service providers, but had failed to engage in programming or make significant progress, and would not able to parent within a reasonable period of time. On the other hand, B.K.'s attachment to father and members of his household was growing. Father had worked hard to address his parenting skills and improve his parenting, and was successfully making adjustments to support B.K. Therefore, the court granted father's motion to transfer custody.

On appeal, mother argues that the admission of B.K.'s therapist's hearsay statements was prejudicial error. At the hearing, B.K.'s therapist did not testify, but there was testimony from two witnesses concerning her statements and opinions. The DCF caseworker testified that B.K.'s therapist communicated that B.K. was overscheduled and lacked a settled structure. In addition, the Easter Seals worker testified that she received information about B.K.'s diagnoses from B.K.'s therapist and that the therapist had raised issues regarding overscheduling of activities and the number of transitions between households. In both instances, mother objected that the information required testimony from a qualified expert, and the court denied the objection.

Mother concedes that hearsay is admissible at a disposition proceeding. 33 V.S.A. § 5317(b) ("Hearsay may be admitted and may be relied on to the extent of its probative value."). Nonetheless, mother argues that the court improperly relied on the diagnoses and opinions of the

therapist because that was technical information, which was required to be presented through expert testimony as set forth in Vermont Rule of Evidence 702. See V.R.E. 702 (explaining that witness qualified as an expert can testify to matters requiring "scientific, technical, or other specialized knowledge" to assist trier of fact). According to mother, this error was prejudicial because the court relied on the hearsay statements regarding B.K.'s needs and mother's failure to address them in its change-of-circumstances and best-interests analyses.

There was no error. Unlike a merits adjudication, the juvenile proceedings statue does not delineate that the Rules of Evidence apply at a disposition proceeding; rather, the statute specifically allows the admission of hearsay to the extent it is probative. Compare 33 V.S.A. § 5315(d) (requiring a merits adjudication to "be conducted in accordance with the Vermont Rules of Evidence"), with id. § 5317(b) (allowing admission of hearsay at disposition and containing no requirement that proceedings comply with rules of evidence). Here, the court did not err in admitting the hearsay statements of B.K.'s prior diagnoses and the opinion of his therapist as to the negative impact of over scheduling because this information was probative and relevant for explaining how DCF and Easter set the plan of services and expectations for mother.

Moreover, the court's findings did not hinge on the hearsay statements about the expert's diagnosis or recommendations. The court's decision on change of circumstances was based on mother's lack of engagement. The court found that mother's progress had stagnated because despite the many services offered to her, mother had not made progress in addressing the issues that caused B.K. to come into custody in the first place. Further, the court's analysis of B.K.'s best interests did not depend on the hearsay, but on a proper assessment of both parents' relationship with B.K., B.K.'s adjustment to his community, the role each parent played in B.K.'s life, and the likelihood each parent would be able to assume parental duties within a reasonable time. See 33 V.S.A. § 5114(a) (listing best-interests factors). The court found that mother played a role in B.K.'s life, but her parenting skills had not improved and her progress was insufficient to demonstrate that she would be able to parent B.K. within a reasonable period of time. In contrast, father had made improvements in his parenting skills and B.K. had an increasingly strong relationship with father and the members of his household. The court's findings are supported by the evidence, and there are no grounds for reversal. See In re B.W., 162 Vt. at 291 (stating that court's findings will withstand review "unless they are clearly erroneous").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3