VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     21-AP-210



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2023

In re N.Y., Juvenile
(T.C., Mother\*)

}
}
}
}
}

APPEALED FROM:

Superior Court, Rutland Unit,
Family Division
CASE NO. 7-1-18 Rdjv
Trial Judge: David A. Barra

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her residual parental rights in N.Y.  She essentially argues that the family division erred in weighing the evidence.  We affirm.

N.Y. was born in January 2018.  At the time of the court's termination order, N.Y.'s biological father was unknown.  Mother has a history of substance abuse; her rights in another child were terminated based on substance-abuse-related issues.  N.Y. was taken into the custody of the Department for Children and Families (DCF) shortly after his birth when his meconium tested positive for cocaine.  In June 2018, mother stipulated that N.Y. was a child in need of care or supervision.  In December 2019, N.Y sought to terminate mother's residual parental rights, and DCF joined his request.

Following a hearing, the court terminated mother's rights in an August 2021 order.  It made the following findings.  After being taken into DCF custody, N.Y. was placed with mother pursuant to a conditional custody order (CCO).  Mother was required, among other things, to follow through with postnatal care, meet N.Y.'s medical needs, and satisfy various conditions related to her own mental-health and substance-abuse issues.  N.Y. remained in mother's care for about one year.  Custody was then transferred to mother's friend because mother's behavior raised substance-abuse concerns and mother failed to follow the mental-health and substance-abuse conditions.  After approximately another year, N.Y. was removed from the friend's care due to her failure to follow DCF recommendations and sign releases.  N.Y. was placed in the custody of foster parents, where he remains.

The court found that mother did not address the action steps needed to keep N.Y. safe and regain full custody.  She did not obtain stable housing that was suitable for N.Y.; she did not engage in services offered to develop her parenting skills and to avoid homelessness; she failed to follow through on a substance-abuse referral or provide urine samples as requested; she failed to engage in substance-abuse programming or counseling; and she was discharged from home

services due to lack of engagement.  Although mother completed one stay at the Serenity House, she failed to follow up with their after-care requests and recommendations.  She had sporadic and episodic contact with N.Y.  She continued to have issues with her substance abuse, mental health, and housing.  She had been unable to maintain her sobriety or engage in services in any meaningful way.  The court found no likelihood that mother could change in a reasonable time.

The court concluded that mother had stagnated in her ability to parent N.Y.  It found that her progress toward meeting the action steps necessary for reunification had stopped or worsened over time.  Despite receiving clear guidance as to what was needed to reunify, mother consistently failed to engage in treatment and counseling as required.  She had not engaged in N.Y.'s care for a significant portion of his life.  She showed no understanding of N.Y.'s emotional, behavioral, or medical needs.

Turning to the statutory best-interest factors, the court indicated that it had considered each factor and they all supported termination of mother's rights.  As to the most important factor, it concluded that mother could not resume her parental duties within a reasonable time.  The court explained that mother's disconnection and lack of engagement could not be overcome in a reasonable time from N.Y.'s perspective.  Her past record revealed little to no progress toward establishing or demonstrating an ability to parent N.Y. safely.  She had not demonstrated the ability to provide emotional support to N.Y.  The court thus terminated mother's residual parental rights.  This appeal followed.

On appeal, mother essentially argues that the court erred in weighing the evidence.  She contends that the court ignored the evidence of her bond with N.Y. and other evidence she considers favorable to her, including her parenting of N.Y. pursuant to a CCO and her alleged sobriety during visitation in the year leading up to the termination hearing.

When the termination of parental rights is sought after initial disposition through modification of a prior order, the trial court must conduct a two-step analysis.  In re B.W., 162 Vt. 287, 291 (1994); 33 V.S.A. § 5113(b).  The court must first find that there has been a change in circumstances warranting modification of the existing disposition order; second, the court must find that termination of parental rights is in a child's best interests.  In re B.W., 162 Vt. at 291.  A change in circumstances is most often found when a parent's ability to care for a child "has either stagnated or deteriorated over the passage of time."  Id. (quotation omitted).

On appeal, we will affirm the trial court's findings unless they are clearly erroneous, and we will affirm its conclusions if supported by the findings.  In re B.S., 166 Vt. 345, 350 (1997).  We do not consider the weight of evidence de novo as mother asserts.  As we have repeatedly stated, our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in reaching its decision.  In re S.B., 174 Vt. 427, 429 (2002) (mem.).

Mother fails to show that the court erred in concluding that she stagnated in her ability to parent N.Y. and that termination of her rights was in N.Y.'s best interests.  The court did not ignore evidence concerning N.Y.'s first year in DCF custody, as mother suggests.  It made findings concerning this period, including that the child was removed from mother's custody under the CCO because mother's behavior raised substance-abuse concerns and mother failed to follow the mental-health and substance-abuse conditions.  Obviously, the court's analysis was not limited to the first year of N.Y.'s life and it is well-established that "the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of

changed circumstances warranting modification of a previous disposition order." In re B.W., 162 Vt. at 291 (quotation omitted). As recounted above, the court found that mother's progress stopped or worsened over time; she had not cared for N.Y. for a significant portion of his life; and she showed no understanding of his needs. The court's conclusion regarding stagnation is well supported by its findings and by the evidence. See id. (recognizing that "stagnation may be shown by the passage of time with no improvement in parental capacity to care properly for the child" (quotation omitted)).

The court's decision also reflects its consideration of the statutory best-interest factors, including N.Y.'s "interaction and interrelationship" with mother and others who "significantly affect[ed] [his] best interests," 33 V.S.A. § 5114(a)(1), and whether mother "has played and continues to play a constructive role, including personal contact and demonstrated emotional support and affection, in the child's welfare," id. § 5114(a)(4). The court appropriately considered N.Y.'s relationship with his foster parents, and it was not required to make a specific finding as to the strength of the parent-child bond. As the court explained, mother was inconsistent and unpredictable throughout N.Y.'s time in custody. While she cared for N.Y. under a CCO for a period, the CCO was terminated after she failed to comply with its conditions. Mother's contact with N.Y. thereafter was sporadic and episodic. The court found mother showed no understanding of N.Y.'s emotional, behavioral, or medical needs and she had not provided care for him for a significant portion of his life. N.Y. was thriving in his foster home, where he had developed strong, loving bonds with his foster parents. It is evident that, whatever bond mother and N.Y. shared, it was outweighed by the other considerations cited by the court, including mother's failure to make progress on the case plan goals. While mother complains that the court "ignored" evidence in her favor as to the bond and its evaluation of the best-interest factors, we leave it to the trial court "to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497 (1997). The court did not err in terminating mother's residual parental rights in N.Y.

Affirmed.


BY THE COURT:


Paul L. Reiber, Chief Justice


Harold E. Eaton, Jr., Associate Justice


William D. Cohen, Associate Justice


3