VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     23-AP-173

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2023

In re A.D., Juvenile          }   APPEALED FROM:
(J.B., Mother\*)            }
                     }   Superior Court, Rutland Unit,
                     }   Family Division
                     }   CASE NO. 97-5-19 Rdjv
                         Trial Judge: David A. Barra

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to A.D., who is five years old.  We affirm.

A.D. was born in October 2017.  In May 2019, the State filed a petition alleging that A.D. was a child in need of care or supervision (CHINS) because mother and father were using and selling illegal drugs in the home, A.D. had been exposed to domestic violence and unsanitary living conditions, and parents had left A.D. with A.D.'s maternal grandmother for long periods without giving grandmother legal authority to provide care for A.D.  The court granted custody to the Department for Children and Families (DCF) in emergency and temporary care orders.  In July 2019, the parties stipulated to the merits of the CHINS petition.

The court adopted a disposition case plan in August 2019 that called for reunification with either parent by December 2019.  At that point, mother was pregnant with a second child and was reported to be taking unprescribed buprenorphine.  The case plan expected mother to undergo a substance abuse evaluation and follow treatment recommendations; apply for services from the Lund Center; complete random urinalyses; not use unprescribed medications; reside in a home that was safe for A.D.; engage in therapy for domestic violence; and gain an understanding of how domestic abuse had affected A.D., as well as mother's relationship with her own mother, who had been an important support.  If mother stayed with father, they were both expected to meet with a domestic-violence specialist.  The case plan contained various expectations for father as well.  In June 2020, the permanency goal was amended to reunification with either parent by September 2020.

In November 2021, DCF filed petitions to terminate the parental rights of both mother and father.  The court held a final hearing over two days in April and May 2023 and issued a written order containing the following findings.

Parents had been evicted from their home in June 2022 and had not regained stable housing. At the time of the termination hearing, they lived in a motel with their infant daughter in conditions that were not suitable for A.D. Neither parent was employed, and they did not have a financial plan for resuming care for A.D.

Both parents missed visits with A.D., which resulted in the cancellation of visits for a time. After visits resumed, parents' attendance continued to be inconsistent. Since September 2020, father had not attended any visits with A.D. and mother had missed about half of her visits. Mother had seen A.D. less than once a month during the six months preceding the termination hearing.

A.D. experiences seizures and requires special medical care. Mother did not know who A.D.'s medical providers were and had not attended a medical appointment with her in four years. Mother did not know how to recognize or treat A.D.'s seizure condition. A.D.'s foster parents had worked to address A.D.'s medical conditions, which had improved dramatically in their care. Mother also had not attended school meetings for A.D.

Mother had not consistently engaged in therapy. She was not currently in treatment for substance abuse. Neither parent had met with a domestic-violence specialist as required by the case plan.

The court found that both parents had stagnated in their progress toward reunification. It considered the statutory factors set forth in 33 V.S.A. § 5114(a) and concluded that they weighed in favor of termination, and therefore granted the petitions. Father did not file a notice of appeal or otherwise participate in this appeal.

On appeal, mother argues that the court erred in finding that she had stagnated in her progress and that she was unable to resume parental duties within a reasonable time. When considering a petition to terminate parental rights after initial disposition, the court must first determine whether there has been a change in circumstances sufficient to justify modification of the original disposition order. In re B.W., 162 Vt. 287, 291 (1994). The requisite change in circumstances "is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." Id. (quotation omitted). "The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention." In re T.M., 2016 VT 23, ¶ 12, 201 Vt. 358 (quotation omitted). If it finds a change in circumstances, the court must then consider whether termination is in the child's best interests in accordance with the factors set forth in 33 V.S.A. § 5114(a). "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (quotation omitted).

The court's findings and the evidence in the record support its determination that mother had stagnated in her ability to properly care for A.D. Although mother initially made progress in visitation and participated in some therapy, her progress later stalled. At the time of the hearing, she was seeing A.D. in person less than once a month. She had not sufficiently informed herself about A.D.'s medical condition or providers to be able to care for A.D. on a full-time basis. She

2

never engaged with a domestic-violence specialist and had stopped participating in substance-abuse treatment. These findings amply support the court's conclusion that mother had failed to make adequate progress in addressing the conditions that led to A.D. entering state custody.

Mother argues that the court erred in finding stagnation based on her inability to obtain housing, because it was attributable to Vermont's housing crisis and not a matter within her control. It is true that "stagnation caused by factors beyond the parents' control could not support termination of parental rights." In re S.R., 157 Vt. 417, 421-22 (1991). But even if mother's inability to obtain housing was a matter entirely beyond her control, which is not clear from the record, there was ample other evidence, described above, supporting the court's finding that mother had stagnated in her progress toward reunification. The allegedly erroneous finding therefore does not warrant reversal. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (noting that harmless-error standard has been employed in termination cases and that court error warrants reversal only if substantial right of party is affected).

Mother also argues that the court erred in concluding that she would not be able to resume parenting duties within a reasonable time. She contends that prior to the COVID pandemic, she had completed many of the action steps required by the case plan and was successfully caring for A.D. without supervision, and that this demonstrates that she could do so again. The record does not support mother's argument. First, it was mother's behavior, not the pandemic, that interrupted unsupervised visits. Both mother and the DCF worker testified that unsupported visits ended because mother returned A.D. to her foster home late one weekend and failed to pick up A.D. from daycare on another occasion. Visits were subsequently reduced to a single weekly visit, which became virtual during the pandemic, but resumed in person in September 2020. Since then, mother had not progressed beyond a single weekly visit, and had missed about half of those visits. Mother had also stopped making progress in several other aspects of the case plan. She admitted at the termination hearing that, despite having had nearly four years to address the issues that led to A.D. entering state custody, she still was not ready to resume parenting A.D. on a full-time basis, that it would take several months more to prepare for a transition, and that it could take up to a year to resume parenting A.D. full-time. The court concluded that A.D. needed permanency and that these time frames were not reasonable given mother's lack of progress and the age of the case. We see no error in the court's conclusion.

Mother also argues that the court erred in faulting her for not attending school or medical appointments because DCF never invited her to those appointments. However, the DCF worker overseeing the case explained that both parents had been encouraged to talk to A.D.'s medical providers and had failed to do so. They had not been invited to school appointments because they had failed to engage with DCF to plan for those appointments. Further, mother had never asked the case worker for details about A.D.'s appointments so that she could attend. Mother's failure to avail herself of opportunities to get involved in A.D.'s care was a matter within her control and supports the court's conclusions that she had stagnated in her progress and was not able to resume parenting within a reasonable time.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
Nancy J. Waples, Associate Justice

4