VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-304



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2024

| | |
|---|---|
| In re H.G. & K.G., Juveniles (P.W., Mother\*) | APPEALED FROM: <br><br> Superior Court, Bennington Unit; <br> Family Division <br> CASE NOS. 21-JV-01627 & 21-JV-01628 <br> Trial Judge: Howard A. Kalfus |

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to minor children H.G., aged nine, and K.G., aged seven.  We affirm.

The following facts are drawn from the record below and the court's findings at the termination hearing.  In November 2021, the State filed a petition alleging that H.G. and K.G. were in need of care or supervision (CHINS) due to father's admitted use of fentanyl and other illicit substances.[*]  The children were in father's sole custody at the time of the petition due to an earlier CHINS proceeding.  Mother was incarcerated and had numerous pending criminal charges.  The court transferred temporary custody of the children to the Department for Children and Families (DCF).

The court found the merits of the petition to be established in May 2022.  It subsequently issued a disposition order continuing DCF custody and adopting a goal of reunification with either parent by February 2023.  The case plan approved by the court called for mother to engage in substance-abuse evaluation and treatment, remain sober and submit to urinalysis tests as requested, participate in parenting education, maintain safe and appropriate housing, attend supervised visits, and follow conditions of release.

In February 2023, DCF filed petitions to terminate both parents' rights.  A final hearing was held in August 2023.  The State presented evidence that mother was released from jail in July 2022.  She eventually began having supervised visits with the children at the DCF office and engaged with Easterseals for several months.  An Easterseals employee testified that mother's interactions with the children during visits were positive and appropriate.  Mother also participated in substance-abuse and mental-health evaluations.  However, by February 2023 mother stopped communicating with DCF and refused to participate in random urinalysis when

---

[*] Father's rights were also terminated in the proceeding below.  He did not appeal.

requested by DCF. She did not follow through with applying for housing despite DCF support. She was subsequently reincarcerated and was incarcerated at the time of the final termination hearing.

At the conclusion of the hearing, the court made the following oral findings by clear and convincing evidence. The court found that mother had not addressed the issues that existed at the time the CHINS petition was filed: she was incarcerated with an uncertain release date, continued to struggle with substance abuse, and did not have housing. It concluded that mother had stagnated in her progress toward reunification. The court found that mother loved the children and they had positive interactions with her. The children were also strongly bonded to their foster mother and well-adjusted to their foster home, school, and community. The court found that mother was unlikely to be able to resume parental duties within a reasonable time because she was being incarcerated awaiting trial. Even if mother were released, she continued to struggle with substance abuse and a lack of housing, which would make reunification difficult. The court found that mother was unable to play a constructive role in the children's lives due to her incarceration, noting that she had only one virtual visit with them in the three to four months prior to the final hearing. It concluded that the statutory factors weighed in favor of termination. Mother appealed.

When considering a petition to terminate parental rights after initial disposition, the family court must first determine whether there has been a change in circumstances sufficient to justify modification of the original disposition order. In re B.W., 162 Vt. 287, 291 (1994). If it finds a change in circumstances, the court must then consider whether termination is in the child's best interests in accordance with the factors set forth in 33 V.S.A. § 5114(a). In re K.G., 2023 VT 51, ¶ 30. "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (quotation omitted).

Here, mother does not challenge the court's determination that her failure to make progress in addressing the problems that existed when the children entered state custody constituted a change in circumstances sufficient to modify the initial disposition order. See In re T.M., 2016 VT 23, ¶ 12, 201 Vt. 358 (explaining that "change of circumstances most commonly found in termination cases is . . . parental stagnation, which may be found if the parent has not made the progress expected in the plan of services for the family despite the passage of time" (quotation omitted)). Rather, mother argues that the family court erred in concluding that termination was in the children's best interests because it found that she and the children had a strong and loving bond. She argues that given this unique bond, the court ought to have fashioned a less-drastic disposition that maintained the family relationship.

The court applied the appropriate standard and its conclusions are supported by its findings. Specifically, it found that although mother had a loving bond with the children, she was unlikely to be able to resume a parental role within a reasonable time because she was incarcerated with an uncertain release date. The court further found that even if mother were released soon, she had not controlled her substance abuse and did not have stable housing. She had not seen the children in several months and had only one virtual visit with them during that time. Mother does not challenge these findings, which support the court's conclusions that

2

mother was unable to parent the children on a full-time basis and that termination was in the children's best interests. See In re S.B., 174 Vt. 427, 429 (2002) (mem.) (explaining that this Court's "role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights").

It is true that "in some cases a loving parental bond will override other factors in determining whether termination of parental rights is the appropriate remedy." In re J.F., 2006 VT 45, ¶ 13, 180 Vt. 583 (mem.). However, the family court did not find this to be such a case, and its determination is supported by the record. See In re M.B., 162 Vt. 229, 238 (1994) ("Public policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child; [CHINS statute] recognizes that severance of that bond may be in the child's best interest."). Nor was the court required to consider less drastic alternatives to termination where it found that mother was unable to resume a parental role. See In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.) ("We have repeatedly rejected the claim . . . that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities."); see also 14 V.S.A. § 2660(b) ("The Family Division of the Superior Court is not required to address and rule out each of the other potential disposition options once it has concluded that termination of parental rights is in a child's best interests."). We therefore see no reason to disturb the decision below.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

3