VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-259

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2025

In re T.W., N.W., & A.W., Juveniles    }   APPEALED FROM:
(E.W., Mother\*)    }
    }   Superior Court, Bennington Unit,
    }   Family Division
    }   CASE NOS. 21-JV-00450, 21-JV-00451 &
                         23-JV-00938
             Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to T.W., N.W., and A.W.  We affirm.

T.W. was born in May 2019 and N.W. was born in November 2020.  In April 2021, the State filed petitions alleging that T.W. and N.W. were children in need of care or supervision (CHINS) because mother had physically abused her two older sons, G.M. and W.M., who were then seven and three years old and also in mother's custody.  Mother was charged with domestic assault and cruelty to a child.  At the time, mother had pending charges of domestic assault and cruelty to a child for striking G.M. on a previous occasion.

T.W. and N.W. were placed in the custody of the Department for Children and Families (DCF) pursuant to emergency and temporary care orders.[*]  After a contested merits hearing, the court determined that T.W. and N.W. were CHINS.  The court found that in January 2021, mother had left her four boys, who were between two months old and six years old, unattended in her apartment while she went to the store.  Mother was aware that G.M. and W.M. were

---

[*] G.M. and W.M. were subsequently placed in the custody of their father.  The father of T.W. and N.W. was incarcerated for much of the pendency of the proceedings, including at the time of the termination hearing.  He did not appeal the termination of his parental rights.

violent toward each other and needed adult supervision. The court also found that mother caused physical injuries to G.M. and W.M. Mother's actions placed T.W. and N.W. at risk of harm.

In January 2022, the court issued a disposition order continuing DCF custody and establishing a goal of reunification with mother or father by July 2022. The court adopted a case plan requiring mother to not use physical discipline on the children, ensure the children's basic needs were met and that they had a safe and sober caretaker at all times, complete the Nurturing Parents program, engage in substance-abuse treatment, maintain a safe home environment, follow all criminal conditions of release, develop a relapse prevention plan, cooperate with service providers, attend the children's medical appointments, participate in Family Time Coaching, attend all scheduled visits, sign releases for DCF, and not incur any additional criminal charges. The date of expected reunification was subsequently extended to August 2023. In September 2023, DCF filed petitions to terminate mother's parental rights to T.W. and N.W.

Meanwhile, in July 2023, A.W. was born. The State filed a petition alleging that A.W. was CHINS because mother had not made progress in the case plans for the older children, denied her pregnancy to DCF, did not seek prenatal care, and lacked housing. In addition, mother had recently been charged with being an accessory to first-degree murder and was arrested and incarcerated shortly after A.W.'s birth. In December 2023, mother stipulated that A.W. was CHINS because mother was incarcerated and unable to care for him. DCF filed a petition to terminate her rights to A.W. in May 2024.

The court held a hearing on all three petitions in August 2024. A.W.'s father agreed to voluntarily relinquish his parental rights at the hearing. The State then presented evidence as to mother, after which the court made its findings and conclusions on the record. The court found that prior to mother's incarceration in July 2023, she had five visits a week with the children but never progressed to overnight visits. After she was incarcerated, she had contact with them once a week for fifteen minutes. The court found that mother had made some progress on the case plan but that her progress had stopped as a result of her incarceration, which was a matter within her control. It concluded that this constituted stagnation sufficient to justify modifying the disposition orders as to T.W. and N.W.

The court then assessed the statutory best-interests factors. It found that mother and the children loved each other and their limited interactions were positive, but the children's foster mother was meeting the children's needs and the children were benefiting significantly from her care. The children had a positive transition into the foster home and were doing well in their respective daycares and schools. The court found that mother would not be able to resume parenting within a reasonable time even if she were immediately released from prison. T.W. and N.W. had been in DCF custody for over three years and A.W. had been in DCF custody for nearly his entire life, and all three children needed permanency as soon as possible. The court further found that mother was not playing a constructive role in the children's lives. It therefore concluded that termination of parental rights was in the children's best interests. Mother appealed.

Mother first argues that the court erred in concluding that she had stagnated in her progress toward reunification. She argues that the evidence shows she was making significant

progress prior to her incarceration but that DCF stopped assisting her with reunification, which caused her progress to stall. In support of her claim, she relies on the DCF worker's testimony at the August 2024 hearing that she had not had contact with mother since that June.

When the court is asked to terminate parental rights after initial disposition, as it was here for T.W. and N.W., the family division must first determine whether there exists a change in circumstances sufficient to justify modifying the existing disposition order. In re B.W., 162 Vt. 287, 291 (1994); 33 V.S.A. § 5113(b). A change in circumstances is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re B.W., 162 Vt. at 291 (quotation omitted).

While stagnation may not be based on factors beyond a parent's control, In re S.R., 157 Vt. 417, 421-22 (1991), this is not such a case. The record does not support mother's assertion that DCF stopped supporting efforts toward reunification after she was incarcerated. Although the DCF worker had not personally contacted mother for over a month at the time of the termination hearing, mother continued to have video contact with the children on a weekly basis. DCF also facilitated an in-person visit with mother in June 2024 at the facility where she was incarcerated, which was a three-hour drive from where the children were living. Mother's inability to have more visits or to complete other action steps in the case plan was due to her criminal behavior and resulting incarceration, which was a matter within her control and cannot be attributed to DCF. See, e.g., In re D.S., 2014 VT 38, ¶ 26, 196 Vt. 325 ("[O]ur case law makes clear that a parent is responsible for the behavior that leads to incarceration and for the consequences that come with such incarceration.").

Mother also argues that the court erred in terminating her parental rights to A.W. at initial disposition. Mother claims that there was no evidence to support the court's conclusion that she was unable to resume a parental role within a reasonable time from A.W.'s perspective, pointing to the progress she made before her incarceration.

"The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29. The court must consider the factors set forth in 33 V.S.A. § 5114(a) in determining the children's best interests. In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450. "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9 (quotation omitted).

The court applied the appropriate standard, and its findings are supported by the evidence and in turn support its conclusion that termination was in the best interests of all three children. As the court found, despite having been afforded extra time to meet the goals of the case plan, mother had not managed to resume overnight visits with the two older children prior to her incarceration. Although she had made some progress, she was not "on the cusp of reunification" when she went to prison. She had not provided primary care for A.W. or seen him in person for most of his life. She was facing serious felony charges, including a charge of being an accessory

to first-degree murder.  Even if she were released soon, she would not be able to immediately resume parenting A.W. or his brothers on a full-time basis, and they needed permanency.  These findings are sufficient to support the court's ruling.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
Nancy J. Waples, Associate Justice