VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     25-AP-023



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

# ENTRY ORDER

MAY TERM,   2025

| | |
|---|---|
| In re A.T., Juvenile<br>(C.R., Father\*) | } APPEALED FROM:<br>}<br>} Superior Court, Rutland Unit,<br>} Family Division<br>} CASE NO. 21-JV-00618<br>Trial Judge: John W. Valente |

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights to twelve-year-old daughter A.T.  We affirm.

A.T. was born in September 2012.  In May 2021, when A.T. was eight years old, the State filed a petition alleging that A.T. was a child in need of care or supervision (CHINS) based on reports that mother's boyfriend was physically abusive toward mother in front of A.T., mother had left A.T. in the care of her maternal grandmother for extended periods of time, and A.T. had been demonstrating violent behavior toward family members and missing significant amounts of school.  At the time the petition was filed, A.T. was in a residential program at Jarrett House.  Mother reported that father had not been involved in A.T.'s life and the State was initially unable to locate father.

The court issued emergency and temporary care orders placing A.T. in the custody of the Department for Children and Families (DCF).  In August 2021, mother stipulated that A.T. was CHINS because mother "left [A.T.] in the care of maternal grandmother who was in poor health and [A.T.] had educational, mental and behavioral health needs that were not being met."  Father attended the merits hearing but did not sign the stipulation.

In September 2021, the court issued a disposition order that continued DCF custody and established a permanency goal of reunification with either mother or father by March 2022.  The case plan adopted by the court required father to check in with A.T.'s service providers to learn about A.T.'s needs, have weekly contact with DCF, visit A.T. once a week, participate in the Easterseals parenting program, engage in mental-health counseling to help him communicate effectively with A.T., and demonstrate that he understood A.T.'s developmental delays and needs.  Father did not attend the disposition hearing, but his attorney stated that father did not object to the case plan or permanency goal.

In August 2022, DCF filed a petition to terminate mother's and father's parental rights. Mother voluntarily relinquished her rights in November 2023 and entered into a post-adoption contact agreement with A.T.'s foster family. The court held a hearing on the petition to terminate father's rights in September 2024.

In a subsequent written order, the court found that father had never communicated with A.T.'s medical, dental, or behavioral health providers. He contacted A.T.'s school once during the three years the case had been pending. He refused to work with Easter Seals. He stopped attending visits with A.T. after August 2021. He did not engage in mental-health counseling. He did not respond to calls or letters from DCF.

A.T. was diagnosed with an intellectual disability and generalized anxiety in March 2023. She was emotionally volatile, exhibited unpredictable behavior, and needed specific supports from her caregivers.

In the year prior to the final hearing, father had three supervised visits with A.T. He had obtained subsidized housing, was able to cook and clean for himself, managed his own financial affairs, and received Social Security income. Father loved A.T. and wanted to be her parent. However, he did not know what her mental, developmental, or behavioral needs were or how to address them, and had never parented A.T. for any significant amount of time.

The court found that there was a change in circumstances sufficient to justify modifying the prior disposition order because although father made some progress in certain aspects of his life, he failed to demonstrate the improvement required by the case plan. The court then assessed the statutory best-interests factors. It found that father loved A.T. but had a minimal relationship with her. A.T. had a good relationship with her foster parents and their family. She was well-adjusted to their home and community and to her new school. Father was unable to assume parental duties within a reasonable time because he had not attempted to engage with A.T.'s service providers or school, had never parented A.T. for any amount of time, and had refused to engage with DCF. Father did not play a constructive role in A.T.'s life. The court therefore concluded that termination of father's rights was in A.T.'s best interests.

On appeal, father argues that the court erred by requiring father to prove at the termination hearing that he was a fit parent. According to father, because the CHINS petition and merits adjudication were based on mother's conduct and mother had agreed to termination of her parental rights, the conditions that led A.T. to be placed in custody were ameliorated. He argues that the court failed to conduct a forward-looking analysis in determining whether he could assume a parental role within a reasonable time.

Father misapprehends the legal standard for terminating parental rights. When considering a petition to terminate parental rights after initial disposition, the family court must first determine whether there has been a change in circumstances sufficient to justify modification of the original disposition order. In re B.W., 162 Vt. 287, 291 (1994). If it finds a change in circumstances, the court must then consider whether termination is in the child's best interests in accordance with the factors set forth in 33 V.S.A. § 5114(a). Id. "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450 (quotation omitted).

2

The court applied the proper standard here and its findings and conclusions are supported by the record. The State presented evidence showing that father failed to make progress toward any of the case plan goals. Father's own testimony confirmed that he had not taken the steps required by the case plan. While father argues that these goals were too restrictive, he failed to object to them at initial disposition. He had only three visits with A.T. over the year preceding the termination hearing. He played no significant caregiving role in her life and had never parented her on a full-time basis. He had "no idea" where she went to school. A.T. had heightened caregiving needs due to her developmental disability and mental and behavioral issues. Despite this, father did not attempt to engage with her service providers and refused to cooperate with DCF or engage in parenting classes to learn how to address A.T.'s needs. It is true that the CHINS petition was based on allegations against mother, because father was not involved in A.T.'s life at that point. However, the record shows that father did not take any significant steps toward assuming a parental role after A.T. was found to be CHINS. These facts support the court's conclusion that father would not be capable of assuming a parental role for A.T. within a reasonable time and that termination of his residual parental rights was in her best interests. See In re M.B., 162 Vt. 229, 236-37 (1994) (explaining that father's love for children and desire to care for them did not outweigh evidence that he would not be able to provide appropriate environment within reasonable period, and concluding that record supported termination of father's parental rights under statutory best-interests factors).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice