VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-156

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2024

In re J.P., Juvenile
(C.L., Mother\*)

} APPEALED FROM:
}
} Superior Court, Addison Unit,
} Family Division
} CASE NO. 22-JV-01795
Trial Judge: David R. Fenster

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her residual parental rights to nine-year-old daughter J.P. We affirm.

J.P. was born in August 2015. A prior conditional custody order to mother expired in November 2022. In December 2022, the State filed a new petition alleging that J.P. was a child in need of care or supervision due to substance abuse in the home by both parents and J.P.'s excessive absences from school. The court transferred custody of J.P. to the Department for Children and Families (DCF) in a temporary care order. In February 2023, the family division found the merits of the petition to be established based on findings that J.P. had missed four days of first grade in the four weeks between the expiration of the conditional custody order and the filing of the second petition; had to repeat kindergarten due to absences; was absent seventy-four times and tardy sixty-two times during her second year of kindergarten; and was found to be sleeping in a room with a bag of drug paraphernalia within her reach when police executed a search warrant in the home in December 2022.

In March 2023, the court issued a disposition order that continued DCF custody and adopted a permanency goal of reunification with mother within six to nine months. The case plan adopted by the court called for mother to cooperate and communicate with DCF and other providers; regularly attend visits with J.P.; attend J.P.'s medical and dental appointments and demonstrate an understanding of J.P.'s medical and dental needs; not allow unsafe individuals, including father, to live in her home; engage in Family Time Coaching; provide safe, clean, and adequate housing for J.P.; identify a safe and reliable means of transportation; engage in substance-abuse and mental-health assessments and follow treatment recommendations; provide urinalysis to DCF; and sign releases to DCF.

The State petitioned to terminate both parents' rights in December 2023. The court held a hearing on the petition in May 2024. Neither parent attended the termination hearing. The

State presented testimony from the DCF caseworker, after which the court issued oral findings. The court noted that both parents had been served with notice of the termination hearing and that mother had attended the pretrial conference at which the date of the termination hearing was set. The court found that mother had not cooperated with J.P.'s service providers, attended J.P.'s medical and dental appointments, or engaged with Family Time Coaching. Mother was offered twice-weekly visits with J.P. but only attended four visits in seventeen months. There was no evidence that mother had safe and suitable housing or reliable transportation. Mother did agree to provide releases for urinalysis, which showed that she was consistently testing positive for cocaine and marijuana. She had not engaged in a substance-abuse or mental-health assessment. The court concluded that there had been a change in circumstances justifying modification of the disposition order because mother had stagnated in her progress toward reunification.

Turning to the statutory best-interests factors, the court found that J.P. had a minimal relationship with mother and no relationship with father. J.P. was strongly bonded to her maternal grandparents, in whose care she had been placed by DCF. She was well adjusted to her foster family, which included her biological sister, and her current school. The court found that neither parent would be able to resume parental duties within a reasonable time and neither parent played a constructive role in J.P.'s life. It therefore concluded that termination of parental rights was in J.P.'s best interests. Mother appealed; father did not.

When, as here, the court is asked to terminate parental rights after initial disposition, the family division must first determine whether there exists a change in circumstances sufficient to justify modifying the existing disposition order. In re B.W., 162 Vt. 287, 291 (1994); 33 V.S.A. § 5113(b). A change in circumstances is "most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re B.W., 162 Vt. at 291 (quotation omitted). If the court finds a change in circumstances, it must then consider whether termination is in the child's best interests using the factors set forth in 33 V.S.A. § 5114(a). "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450.

On appeal, mother's primary argument is that the court erred in terminating her parental rights based solely on the hearsay testimony of the DCF caseworker. "Hearsay evidence is admissible in termination proceedings as long as it is not the sole basis for termination of parental rights." In re A.F., 160 Vt. 175, 181 (1993). Mother's argument fails because the court's decision in this case was not based solely on hearsay. The DCF caseworker testified about matters within her personal knowledge, including mother's refusal to cooperate or communicate with her, mother's failure to attend scheduled meetings, mother's refusal to allow the caseworker into her home, and mother's failure to attend visits with J.P. She also testified about her personal observations of J.P. in her foster home.

Mother argues that the court was required to make specific findings about the reliability and probative value of the hearsay testimony that was admitted. Mother does not identify any specific hearsay evidence that was improper or erroneous. Neither she nor her attorney objected to the admission of evidence at the termination hearing. Accordingly, we decline to disturb the court's decision on this basis.

The court applied the appropriate standard in assessing the petition to terminate mother's parental rights. Its findings are supported by the record, and in turn support its conclusion that mother stagnated by making virtually no progress toward the case plan goals. The record and findings also support the court's conclusion that it was in J.P.'s best interests to terminate mother's parental rights because mother had minimal contact with J.P. since the outset of the proceeding and had not addressed the issues that led to State involvement, making her unable to resume parental duties within a reasonable time.

Mother argues, however, that the court erred in terminating her parental rights when there were other permanency alternatives available. "We have repeatedly rejected the claim . . . that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities." In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.). We therefore see no error.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice